(No. 32264.—

FRANK SMODA, Appellant, *vs.* DAN GALLAGHER, Appellee.

*Opinion filed May 22, 1952.*

HARLAND D. WARREN, and CARLOS O. DAVIES, both of Ottawa, for appellant.

JAMES H. DUBBS, of Mendota, (JOHN S. MASSIEON, of Peru, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

Frank Smoda, appellant, and Dan Gallagher, appellee, were opposing candidates for the office of commissioner of highways of the town of Earl, La Salle County, at the regular election for that office held on April 3, 1951. On April 4, 1951, the canvassing board of the town announced the results of their canvass and certified that each candidate had received 325 votes and that the vote in the election, therefore, was a tie. On April 7, 1951, lots were cast under the direction of the town clerk, pursuant to the statute, and appellee, Gallagher, was declared the winner and the duly elected candidate.

Appellant Smoda filed his petition to contest the election in the county court of La Salle County on May 3, 1951. After the issues were properly joined, it appearing that the ballots had been properly preserved, a full recount was had under the direction of the court. As a result of this recount and inspection of the individual ballots by the court, two ballots were rejected on the ground that they had not been properly initialed by the election judges. It happened that one of these ballots was a vote for appellant, the other for appellee. All other objections made by respective counsel as to the legal sufficiency of various ballots were overruled and the rulings of the court in those respects are not questioned here.

At the trial, respective counsel stipulated as to the boundaries of the two "precincts" in the election. It is undisputed that there were two polling places used in connection with the voting, one located in each of the geographical divisions of the town as described. Appellant

introduced testimony to show that one of the persons who voted in the election at the polling place in the area designoted as "Precinct 1" was not a resident of the town of Earl. Appellant also introduced testimony to the effect that two other voters who voted at the same polling place were residents of the town of Earl but not of the area designated as "Precinct 1." There was no evidence to show for whom any of the three persons voted.

At this point in the proceedings the appellant rested his case. Counsel for appellee then moved that the petition be dismissed and that appellee be declared by the court the duly elected highway commissioner of the town of Earl. This motion was allowed by the court. Counsel for appellant then moved that another drawing be held, this time under the direction of the court. This motion was overruled. By this appeal appellant seeks a reversal of the judgment of the county court on the ground that it is against the law and the evidence. He further contends that the court erred in refusing his request for a new drawing.

There is little dispute as to the facts. The original canvass showed a total of 339 votes cast in precinct 1, 206 for Gallagher and 133 for Smoda. In precinct 2, the total was 311, 192 for Smoda and 119 for Gallagher. The ballots rejected upon recount by the court were one cast for Smoda in precinct 1 and one cast for Gallagher in precinct 2. Upon recount, therefore, and without regard to appellant's further contentions, the parties were again tied at 324 to 324 with the vote by precincts as follows:

|  | *Precinct 1* | *Precinct 2* | *Total* |
|---|---|---|---|
| Smoda | 132 | 192 | 324 |
| Gallagher | 206 | 118 | 324 |

There may be some question whether the evidence as to the residence of one of the voters in question established the fact that he lived in a different precinct from that in which he voted, but, for purposes of this opinion, we shall

assume,.that such fact is established. The appellant argues that the proof shows that there were three illegal votes cast, all in the first precinct, one voter not being a resident of the town and two voters being residents of another precinct. He contends, under the authority of the decision of this court in *Flowers* v. *Kellar*, 322 Ill. 265, that since it was not determined for whom these persons voted, the loss of the three votes must be apportioned between the candidates in the proportion that the vote for each in the precinct bears to the total vote. Pursuant to this contention, appellant projects the following figures:

|            | Precinct 1   | Precinct 2 | Total      |
|------------|--------------|------------|------------|
| Smoda      | 130.82841    | 192        | 322.82841  |
| Gallagher  | 204.17162    | 118        | 322.17162  |

. If appellant is correct, the result of the election would, of course, be changed. It will be observed that the result is changed only if we apply the proportionate loss doctrine to precinct 1 as petitioner contends. If applied to the total vote of both candidates in the entire town after recount, we would start with the same figure in each case, make the same proportionate reduction and arrive at the same total for each man.

By a line of decisions beginning with the case of *Choisser* v. *York*, 211 Ill. 56, this court has held that where illegal votes have been cast and the evidence fails to show for whom they were cast, the number of such illegal votes should be apportioned among the candidates in the proportion that the vote cast for each bears to the whole vote cast in the precinct and the total of each candidate reduced by the resulting amount. This principle was reaffirmed in the case of *Flowers* v. *Kellar*, 322 Ill. 265; *McNabb* v. *Hamilton*, 349 Ill. 209, and *Neff* v. *George*, 364 Ill. 306. It was properly applied to the situations and in the elections involved in those cases.

We believe, however, that this principle cannot be applied under the facts now before us, for to apply it

assumes that for purposes of this town election, we have two election districts or precincts within the town. There is no dispute that there were two polling places for the election; that they were referred to as precinct polling places and that each served, or was designed to serve, a certain geographical portion of the town called a precinct in the election. This does not mean, however, that these two so-called precincts were, for the purposes of the election in question, election districts in the constitutional sense, either for determining the qualifications of voters or the true results of the election.

In *Williams* v. *Potter,* 114 Ill. 628, this court observed that while under the general election law for other purposes there may be several precincts in a township, yet for purposes of a town election there can be but one precinct, which is coextensive with the boundaries of the town. We also observed that the county board might, under the applicable statutes, establish more than one polling place, and these might be used in the town election for the convenience of the voters, but that nevertheless there was still only one precinct.

In *People ex rel. Delaney* v. *Markiewicz,* 225 Ill. 563, following the principle of the *Williams case,* in a situation involving an election for a town commissioner of highways, we held that one who had resided in the township for thirty days next preceding the election could vote at that election regardless of the fact that he had not lived in the particular "district" or "precinct" for thirty days. In *Donovan* v. *Comerford,* 332 Ill. 230, we were considering the constitutional election district under the city election law but some of the language in that opinion, found on pages 234 and 235, applies with equal force here: "The meaning of these words ('district' and 'precinct') must be gathered very largely from the connection in which they are used in each instance. (*People* v. *Markiewicz,* 225 Ill. 563.) They have no technical meaning. 'Election district' is de-

fined by Webster as a district created for purposes of election, and 'election precinct' by the Standard Dictionary as a subdivision of a town or city in which electors vote. Each is a defined portion of territory established for election purposes. A precinct is necessarily a district. The constitution contains no definition of the election district in which a person must have resided thirty days next preceding any election to be entitled to vote at such election. The establishment of such district is left for the legislature to fix by law."

Section 3 of article VI of the Township Organization Act provides: "Each town shall, for purposes of town meetings, constitute an election precinct." (Ill. Rev. Stat. 1951, chap. 139, par. 52.) Section 1 of the same article provides: "The annual town meeting, in the respective towns, for the election of town officers, and the transaction of the business of the town, shall be held on the first Tuesday of April in each year, at the place appointed for such meetings." (Ill. Rev. Stat. 1951, chap. 139, par. 50.) Section 7 of article VII of the same statute empowers the county board, in any organized town where the number of voters at the last preceding general election exceeded 800, to require that they be provided one or more additional ballot boxes and places for the reception of votes, which places shall be selected with reference to the convenience of the electors of the town, and, further, that the board shall designate at which of such places the miscellaneous business of the town shall be transacted. The Township Organization Act and not the other general or special election laws now in force governs the mode of conducting elections within the town for town officers, the qualification of voters, the designation of the polling places, and the canvassing of the results of the election. In essence, town officers are still elected at the "town meeting," though for convenience more than one polling place within the town may be designated where votes may be cast for such

officers on the day of the town meeting. In the *Williams case* cited above, we said at pages 633, 634: "The foregoing provisions, it is believed, are all that have any special bearing on this case. They apply to town elections exclusively, and this fact must be kept constantly in view in the consideration of this case. Elections for other purposes, such as for State and county officers, are governed by the general Election law applicable to counties under township organization, which consists of different and independent statutory provisions, and the whole difficulty in this case has evidently arisen from confounding the two systems pertaining to elections in counties under township organization. * * * While, under the general Election law, for other purposes there may be several *precincts* in a township, yet for the purposes of a town election, merely, there is but one precinct,—or, in other words, but one territorial boundary limiting the right to vote, and that is co-extensive with the township itself. While this is so, there may, under certain circumstances, be several polls or places where votes may be lawfully received, in the same township, but they are all to be regarded as in the same precinct. They are established for the convenience of the voters, and each polling place is open to all the voters alike, subject to the limitation, of course, that no one is permitted to vote at more than one place at the same election." In the same case we had occasion to point out the essential differences in the manner of conducting a town election from that of other elections. We said, at page 635: "Moreover, the mode of conducting the election, canvassing and making returns thereof, at a mere polling place for township purposes, is altogether unlike that which the law requires for a precinct election. In the latter case each precinct is wholly independent of all the others, and makes its own returns directly to the clerk of the county court. In the case of mere polling places, as soon as the polls are closed the ballot boxes of the subordinate polls are taken

to the chief polling place where the town clerk officiates, and they are all there opened and canvassed just as if they had all been deposited in one box, and the result declared and recorded in the presence of the assembled voters."

For the reasons we have given, we believe that the county court of La Salle County was correct in refusing to recognize that there were two separate constitutional voting districts or precincts for purposes of the town election in question. If there is but one precinct in such election for the purpose of determining the qualifications of voters, there is but one for all other aspects of the election, including matters of contest and the disposition of illegal votes.

In his reply brief appellant cites the case of *Stevenson v. Baker*, 347 Ill. 304. It is true that case involved an election contest growing out of an election for town supervisor. However, the question now before this court was not decided. For purposes of that opinion it was apparently assumed by court and counsel that there were two precincts in the election and that the procedures of the county court based upon that assumption were correct. There is nothing in the opinion to show that they were questioned by either side.

We further believe that the court was correct in its ruling denying appellant's motion for another drawing. The only lottery provided for by law in such cases was that held under the direction of the town clerk. (Ill. Rev. Stat. 1951, chap. 139, par. 70.) The jurisdiction of the court in such cases is confined strictly to hearing and deciding the election contest, including final action upon the petition filed. Nor would such a drawing have been just or equitable. It would in effect have given appellant a second chance to be declared elected merely by virtue of his having filed an election contest.

The decision and judgment of the county court of La Salle County is affirmed.

*Judgment affirmed.*