GLEN FRESE, Plaintiff-Appellee and Cross-Appellant, *v.* JEAN CAMFERDAM, Defendant-Appellant and Cross-Appellee.—(LUDWIG EINESS *et al.*, Intervenors-Appellants and Cross-Appellees.)

Third District   No. 78-214

Opinion filed September 5, 1979.

Stuart R. Lefstein and Samuel S. McHard, both of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellants.

Franklin S. Wallace and Glenn F. Ruud, both of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

On April 5, 1977, an election was held for the office of assessor of South Moline Township, Rock Island County, Illinois. The defendant, Jean Camferdam, was subsequently certified as elected to this office. Her

opponent, Glen Frese, seeking to be declared the duly elected assessor, contested the election. Prior to trial, two absentee voters, Ludwig Einess and Michael Fennelly, endeavored to intervene in the suit, but their petition for intervention was denied. On January 30, 1978, the Circuit Court of Rock Island County entered judgment in favor of the plaintiff Frese, and declared him to be the winner of the election. It is from this judgment that Camferdam appeals. Einess and Fennelly appeal from the order denying their petition for intervention.

The pertinent facts are as follows. Prior to the election for the office of assessor of South Moline Township, Loween Geyer, incumbent township clerk and Republican candidate for that office in the April 5 election, appointed four "deputies" to assist her in delivering ballots to absentee voters and returning those same ballots to the township clerk's office. Her four appointees were Larry Burns, a Republican precinct committeeman, the incumbent township supervisor, and candidate for that position on April 5; Jack Dy, Republican candidate for trustee; Eleanor Anderson; and defendant Camferdam. Geyer, her deputies and several other individuals who had not been so "deputized" delivered ballot applications and absentee ballots to the home or residence of 36 absentee voters prior to election day, according to the stipulation entered into by the parties. After each ballot had been voted, it was personally delivered by the voter either to the clerk Geyer or one of her deputies, with two exceptions. These voted absentee ballots were eventually returned by Geyer or one of her appointed assistants to the township office and kept in an unlocked file cabinet in Larry Burns' office, where they remained until April 5. The result of the election was 1,634 votes for Camferdam, and 1,618 for Frese, a difference of 16 votes.

In its opinion declaring Frese to be the winner of the election by 16 votes, the trial court made numerous findings. The court first held that the manner of delivery and return of the absentee ballots as heretofore described was contrary to the applicable provision of the Illinois Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 19—6) and as a consequence 39 absentee ballots were to be voided. As an additional ground for voiding these ballots, the court found that some of the applications for these ballots were not timely filed. The trial court also voided an additional four ballots for late or no registration, and four ballots for improper signature on the application and ballot envelope. The apportionment of these 47 invalid ballots resulted in a deduction of 38.9 votes from Camferdam's total, and 6.733 from Frese's total. The result of this apportionment was that Frese won the election by a 16.167 vote margin.

The first issue raised by the defendant Camferdam on appeal concerns the invalidation of the 39 absentee ballots because of improper delivery and return. The controlling statutory provision is section 19—6 of

the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 19—6), which reads as follows:

> "Such absent voter shall make and subscribe to the certifications provided for in the application and on the return envelope for the ballot and such ballot or ballots shall be folded by such voter in the manner required to be folded before depositing the same in the ballot box, and be deposited in such envelope and the envelope securely sealed. Such officer shall then endorse his certificate upon the back of the envelope and the envelope shall be mailed by such voter, postage prepaid, to the officer issuing the ballot or, if more convenient, it may be delivered in person, but in any event it must be returned into the hands of the officer in sufficient time for the ballot or ballots to be delivered by such officer to the proper polling place before the closing of the polls, on the day of the election."

As the trial court pointed out in its opinion, in the instant case absentee ballots were returned to the township office in one of three ways: They were either handed by the voters to clerk Geyer herself at a place other than her office, who then personally delivered them to the township office; handed to one of her appointed "deputy" clerks who returned them to the office; or handed to a "nonofficer," who either returned them to the office personally, or delivered them to clerk Geyer or one of her deputies. Clearly none of these methods of return square with the statutory directives, which we will hereinafter discuss, that the ballot be returned in a sealed envelope either by mail or by personal delivery to the office of the clerk. However, whether or not strict compliance with section 19—6 is required depends upon whether a mandatory or directory reading is to be given to that statute. The trial court gave the provisions of section 19—6 a mandatory reading, and consequently found the return of the absentee ballots invalid.

In concluding that the absentee ballot return provisions of section 19—6 of the Election Code were mandatory, the trial court was guided by the Illinois Supreme Court's decision in *Clark v. Quick* (1941), 377 Ill. 424, 36 N.E.2d 563. In *Clark*, the court was faced with the task of determining the validity of 46 absentee ballots. As in the present case, the validity of the absentee ballots was attacked on the grounds that the return of the ballots was not in accord with the applicable statutory provision. The statute then in effect was section 467 of the absent voters law (Ill. Rev. Stat. 1939, ch. 46, par. 467). The language of section 467 of the absent voters law pertaining to the method of return of absentee ballots was virtually the same as the language of the present section 19—6 of the Election Code. The supreme court, in finding the absentee ballots void, held that the provisions requiring the voter to mail the envelope

containing the ballot to the office issuing the ballot were mandatory and not directory. The court stated (377 Ill. 424, 430-31, 36 N.E.2d 563, 566): "It is the clear intention of the Absent Voters law that the legislature was willing and intended to commit the temporary custody of a ballot to the United States mails for delivery to the proper officials. *It is equally clear that there was no intention that such custody should be committed, even temporarily, to any other person or agency.*" (Emphasis added.)

*Clark* has never been overruled. The defendant, however, contends that the case of *Craig v. Peterson* (1968), 39 Ill. 2d 191, 233 N.E.2d 345, to the extent it conflicts with *Clark*, is controlling. In *Craig*, the plaintiff contended that the absentee ballots returned from 14 precincts should be invalidated because none of them contained the initials of an election judge, as required by section 17—9 of the Election Code (Ill. Rev. Stat. 1965, ch. 46, par. 17—9). The defendant argued that the statutory provision requiring initialing was directory rather than mandatory, and thus the ballots should not be declared void. The court agreed with the defendant, and made the following statement on the subject of mandatory versus directory requirements: "[I]t is * * * apparent that in construing statutory provisions regulating elections the courts generally have tended to hold directory those requirements as to which the legislature has not clearly indicated a contrary intention, particularly where such requirements do not contribute substantially to the integrity of the election process." 39 Ill. 2d 191, 196, 233 N.E.2d 345, 348.

It is the defendant's contention that section 19—9 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 19—9), which provides for the rejection of absentee ballots under certain specific circumstances, is the "contrary intention" of the legislature referred to in *Craig*, and consequently section 19—6 is directory only. She argues that the legislature, by specifying the conditions under which absentee ballots are to be rejected in section 19—9, has manifested an intention that all other irregularities—such as a failure to comply with the return provisions of section 19—6—are not to result in an invalidation of the ballots. Defendant further argues that section 19—6 is directory because the absentee ballot return requirements found therein, in the words of *Craig*, "do not contribute substantially to the integrity of the election process." According to her analysis, the integrity of the election process is endangered only when there is proof that ballot tampering has occurred. Therefore, she takes the position that the improper return of absentee ballots does not endanger the integrity of the election process absent proof that such improper return resulted in a tampering of the ballots. She concludes because section 19—9 of the Election Code provides that ballots that are tampered with are to be rejected, a mandatory reading of section 19—9 and concomitant rejection of ballots improperly returned

but untampered with does not "contribute substantially to the integrity of the election process."

■■ We disagree with this contention, finding the following passage from *Clark* applicable and determinative of the issue before us:

> "There is nothing in the record before us to indicate that any of them [the forty-six absentee ballots] were actually tampered with by any unauthorized person, but it is entirely obvious that the opportunity to do so was present. It is the entire theory of our ballot law, as expressed in all of the cases, that once a ballot has been marked by a voter in secret, from that time on it shall not be subject to any opportunity for any other person to mar, change or erase it. It will be found in all of the cases that the question for consideration by the court is not whether the ballot has been tampered with, but whether or not an unauthorized person has had an opportunity to do so. If the opportunity has been present the presumption seems to follow that it has been used." (377 Ill. 424, 430, 36 N.E.2d 563, 566.)

See *Talbott v. Thompson* (1932), 350 Ill. 86, 182 N.E. 784.

■■ In the instant case, as in *Clark*, there is no evidence of any fraud or tampering with the absentee ballots. However, the method of return employed certainly presented opportunities for tampering. The absentee ballots were not returned by mail or personally by the voters to the clerk's office, but rather handed by the voters to individuals who in fact were all candidates of one political party in the election. When the ballots were returned, they were not securely kept in the township clerk's office, but instead kept until the day of the election in an open filing cabinet in Larry Burns' unlocked office. There is also testimony that prior to the election blank ballots were kept in an unlocked storeroom of the township office, and in fact on one occasion were available on a table in a recreation room of the township office to which a great many people had access. The sanctity of the voted ballot and the integrity of the entire election process demand that under these circumstances, where the opportunity for tampering was obviously present, the absentee ballots be declared invalid.

■■ Among the absentee ballots the trial court declared invalid for improper delivery were those delivered personally to Loween Geyer at a place other than her office. It is true that nowhere in section 19—6 does there appear a requirement that the ballot, if not mailed, must be returned to the *office* of the clerk or issuing officer. In fact, the statute might suggest that personal delivery to the issuing officer, wherever that person may be found, is sufficient return. However, in other contexts, the Illinois Supreme Court has held that the receipt of a document by a public official at a place other than his office is of no legal effect. In *Brelsford v.*

*Community High School District No. 36* (1927), 328 Ill. 27, 159 N.E. 237, the petitioners sought to file a petition to contest an election. Finding the circuit clerk's office locked, the petitioner's attorney went to the clerk's residence and left the petition and filing fee with the clerk's daughter, a deputy clerk. Even though the daughter placed a file mark on the petition, and the petition was taken to the clerk's office several days later, the supreme court held that the procedure did not square with the statutory requirement of "filing * * * in the circuit court." (Ill. Rev. Stat. 1927, ch. 46, par. 130.) The court stated: "The filing of any document required to be filed in the office of the clerk necessarily implies the delivery of it to the clerk and also requires its delivery in the office of the clerk. The words in the statute * * * mean not only placing the written statement in the possession of the individual who holds the office of clerk of the court, but that it shall come into his official custody for preservation in his office * * *. It is not filed until it is in his office, where the files, papers and records of the court are required to be preserved." (328 Ill. 27, 33, 159 N.E. 237, 239; see *Daniels v. Cavner* (1949), 404 Ill. 372, 88 N.E.2d 823.) Similarly we are of the opinion that unless an absentee ballot is mailed to *the office* of the issuing officer, or personally delivered there by the absentee voter, the delivery requirements of section 19—6 are not met. This result is mandated not only by our overriding concern to keep intact the integrity of the entire election process, and to eliminate the increased opportunity for tampering presented when delivery of an absentee ballot is made at a place other than the office of the issuing officer, but is also suggested by the recent changes made in section 19—6 by the General Assembly, which are effective December 1, 1980. As a result of Public Act 80—1469, section 2, section 19—6 will require that the voted ballot be mailed "to the *election authority* issuing the ballot or, if more convenient, it may be delivered in person * * *." (Emphasis added.) Obviously personal delivery of an absentee ballot to an entity such as a Board of Election Commissioners can only be accomplished at the office of that authority. Because it is unlikely that the legislature intended different methods for delivery of absentee ballots depending upon the nature of the "election authority," we believe that delivery by mail or in person to the *office* of the issuing officer, and no other place, is required by the present statute.

Our reliance on *Clark* manifests our rejection of defendant's contention that *Craig* is controlling. We do not accept the argument that because section 19—9 specifies the grounds for rejection of absentee ballots, all other departures from the statutory provisions governing the application, issuance, delivery, and return of absentee ballots are condoned. Were that so, then any divergence from the statutory requirements of the Election Code pertaining to absentee ballots not

tantamount to the actual fraud or tampering prohibited by section 19—9 would be permissible. The integrity of the election process does not allow such an interpretation, nor is it the intent of the legislature that the pertinent sections of the Election Code be given such a construction. In 1941, the Illinois Supreme Court declared the absentee ballot return provisions of section 467 to be mandatory. Had the legislature intended the provisions of that statute to be directory, it would have subsequently acted to change the *Clark* holding. It has not done so. In the absence of a contrary manifestation by the legislature, the holding of *Clark* is binding upon this court. The absentee ballot return provisions of section 19—6 of the Election Code are mandatory. Because we so hold, we do not address the issue of the authority of Clerk Geyer to appoint "deputy" clerks, as section 19—6 is quite clear that the absentee ballots be returned by mail or in person to the clerk's office, and there is no provision for the utilization of deputies, assistants, or nominees in that statute. We similarly find no need to address the issue of the propriety of invalidating the absentee ballots on the grounds of late applications.

The second issue before us concerns the method used by the trial court in apportioning the invalid absentee votes between the candidates. The trial court held that where it could not be determined how a vote was cast, "ballots would be apportioned between the two candidates in a ratio of each candidates vote at a given *polling place* to the total vote cast at that place with respect to the type of ballot cast, that is, paper or machine." (Emphasis added.) The defendant contends that this method of apportionment was erroneous under *Smoda v. Gallagher* (1952), 412 Ill. 271, 106 N.E.2d 181. In *Smoda*, the Illinois Supreme Court held that under the Township Organization Act every town constitutes one election precinct (Ill. Rev. Stat. 1951, ch. 139, par. 52), regardless of the number of polling places located within the township. Consequently, the apportionment of illegal ballots was to be done on a township-wide basis. (This method of apportionment, if applied to the instant case, would result in Camferdam remaining the winner of the election.) Here the trial court, in apportioning the ballots, relied upon the case of *People ex rel. Schwartz v. Fagerholm* (1959), 17 Ill. 2d 131, 161 N.E.2d 20, where the court held that where the county board or board of election commissioners has, pursuant to the Election Code (Ill. Rev. Stat. 1957, ch. 46, pars. 11—2, 11—3) fixed election precincts, the township no longer comprises a single precinct.

As defendant Camferdam correctly points out, *Smoda*, because it deals with the apportionment of illegal votes cast in a township election, is directly on point. Furthermore, *Smoda* was never expressly overruled in *Fagerholm*. However, *Fagerholm* involved a referendum and not a township election and consequently did not regard *Smoda* as persuasive

on the issue of vote apportionment. In *Fagerholm* the supreme court made it quite clear that "a township is a single election precinct *unless* and until further election precincts are fixed \* \* \*." (Emphasis added.) (17 Ill. 2d 131, 140, 161 N.E.2d 20, 26.) The record in the case at bar reveals that there are 27 election precincts in South Moline Township. The presence of these precincts, apparently created by the county board, distinguishes *Smoda* and makes the *Fagerholm* case applicable. We hold the trial court properly apportioned the illegal absentee votes on a "polling place"-wide (*i.e.*, precinct-wide) basis, following the *Fagerholm* dictates.

■■■ Plaintiff Frese urges this court to discard all absentee ballots instead of apportioning the 47 invalid ballots between the two candidates. We feel that the facts of this case do not require such action. In this case not all absentee ballots are to be invalidated. The only absentee ballots invalidated are the 39 declared void because of improper return, four because of late or no registration, and four because of improper or lack of signature, totaling the 47. In *Webb v. Benton Consolidated High School District No. 103* (1970), 130 Ill. App. 2d 824, 826, 264 N.E.2d 415, 418, the court stated: "Where the portion of votes containing illegal ballots can be identified with certainty, and proof of irregularities in voting are not such as to justify a disenfranchisement of all voters in that precinct, it is proper to apportion the illegal ballots and surcharge the votes in that precinct accordingly instead of excluding the entire vote." (*Cf. Drolet v. Stentz* (1967), 83 Ill. App. 2d 202, 227 N.E.2d 114 (vote of entire precinct voided where number of illegal ballots unascertainable).) In *Gibson v. Kankakee School District 111* (1975), 34 Ill. App. 3d 948, 955, 341 N.E.2d 447, 452, we said: "The total vote of a precinct ought not to be disenfranchised unless the proof of irregularities is so clear, and their character so serious or numerous, that *the number of legal votes cannot be ascertained and separated from the illegal ones,* in which case disenfranchisement of an entire precinct cannot be avoided." (Emphasis added.) In the case at bar, the number of legal absentee votes can be easily ascertained, because only 47 votes are invalid. Rejection of all absentee votes would only result in an unnecessary disenfranchisement of voters. Apportionment of the 47 illegal ballots is proper here.

The final issue raised on appeal concerns the trial court's denial of the petition by absentee voters Einess and Fennelly to intervene. The applicable statute is section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 26.1), which states that upon "timely" application anyone shall be permitted to intervene in an action, as a matter of right, upon certain grounds. The plaintiff Frese contends that timeliness is a matter of discretion for the trial court (see *Childress v. State Farm* (1968), 97 Ill. App. 2d 112, 239 N.E.2d 492; *Moore v. McDaniel* (1977), 48 Ill.

App. 3d 152, 362 N.E.2d 382). Defendant Camferdam, however, states that in situations where a petition for intervention is made prior to trial, as in the case at bar, courts have inevitably found the petition to be timely and have allowed the intervention. *Wheeling Trust & Savings Bank v. Village of Mt. Prospect* (1975), 29 Ill. App. 3d 539, 331 N.E.2d 172.

■■ In the instant case, the petition for intervention was filed on December 20, 1977, one day before the cause was set for trial. A case involving an election contest, more than any other type of case, requires swift disposition, and the granting of the petition to intervene would have undoubtedly delayed the beginning of the trial. The trial court, appreciative of the need for celerity in resolving the issues before it and in determining the winner of the election, denied the petition, and, in our opinion, rightfully so. Given the nature of the case, we find no abuse of discretion by its actions.

■■ The decision of the trial court in denying the petition for intervention can also be defended on grounds unrelated to timeliness. One of the grounds for intervention as of right is "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action." (Ill. Rev. Stat. 1977, ch. 110, par. 26.1(1)(b).) As the defendant Camferdam points out, had Einess and Fennelly been allowed to intervene, they would have argued that their constitutional right to have their votes counted was being violated by the invalidation of their absentee votes. This very constitutional argument was posited by defendant Camferdam on appeal and although we decline to accept it, we deem it to be ably advanced and not to be "inadequate" for the purposes of section 26.1(1)(b). Consequently, their petition for intervention was properly denied.

On the basis of the foregoing, the judgment of the Circuit Court of Rock Island County is affirmed.

Judgment affirmed.

ALLOY and SCOTT, JJ., concur.