THE PEOPLE *ex rel.* SAM CIACCIO, Plaintiff-Appellant, v. WHITEY MARTIN, Defendant-Appellee.

Third District    No. 3—91—0090

Opinion filed October 18, 1991.

Edward G. Vogt, of Kankakee, for appellant.

Power & Kick and Carr & Carr, both of Kankakee (L. Patrick Power and Fred S. Carr, Jr., of counsel), for appellee.

JUSTICE GORMAN delivered the opinion of the court:

This action was brought against defendant Whitey Martin in a suit filed by plaintiff Sam Ciaccio to determine who was lawfully elected alderman of the fifth ward of the City of Kankakee, Illinois, in April 1989. Following a bench trial, the court rendered judgment for the defendant. The plaintiff appeals. We affirm.

On April 4, 1989, an election for alderman for the fifth ward of the City of Kankakee was held. Approximately 1,000 votes were cast, including several absentee ballots. Thirty-seven absentee ballots had been issued to voters who applied to vote absentee based on physical incapacity to be present at the polls. Of these 37 applications, 25 did not state the reason for the physical incapacity, as required on the form. Among the absentee votes were those of Amy Ciaccio, plaintiff's daughter, and, purportedly, Anthony Poulos.

The official proclamation of the election results showed Ciaccio the winner. After adjustments for certain errors in calculating the results were made, the count was 518 for Ciaccio, 516 for Martin.

In October 1989, the Kankakee city council took action to remove plaintiff from office and to install defendant therein. Plaintiff sued, alleging that the requirement that a voter applying for an absentee ballot based on physical incapacity state the reason for the incapacity is merely a directory requirement. The trial court found for the defendant. It stated that the statute clearly requires an applicant to state the reason for his or her physical incapacity on the application. It found that the statutory provisions should be adhered to because absentee ballots are more easily the subject of fraud than those cast in the regular manner. The court further found that Amy Ciaccio was not a resident where she voted for her father and therefore her vote should not be counted. Finally, the court found that Anthony Poulos' vote should not be counted since it appeared that he never signed his absentee ballot application. When the court could determine for whom the faulty absentee ballots were cast, it deducted the votes from the candidate's total; when it could not do so, it applied the rule of proportionality and reduced the votes of the candidates *pro rata*. After determining which votes were properly cast, the court found that Martin had received a majority of those votes and was elected to the office.

The sole issue on appeal is whether the trial court erred in finding mandatory the requirement that a voter applying for an absentee ballot based on physical incapacity state the reason for that incapacity. Citing *Craig v. Peterson* (1968), 39 Ill. 2d 191, 233 N.E.2d 345, the

plaintiff argues that even where the legislature has declared its intention in seemingly mandatory terms, the courts have been unwilling to disenfranchise voters without their fault. In the case at bar, argues plaintiff, the applicants merely failed to state why they were physically incapable of going to the polls on election day, which failure was ignored by the county clerk, who issued the absentee ballots. Therefore, argues plaintiff, although the statute appeared mandatory, the court should not disenfranchise the absentee voters because they were not at fault.

■ Section 19—3 of the Election Code (Ill. Rev. Stat. 1989, ch. 46, par. 19—3) provides that "[a]pplication for [absentee] ballot *shall* be substantially in the following form" (emphasis added). Further on it reads: "I state *** that I shall be physically incapable of being present at the polls of such precinct on the date of holding such election for the following reasons: I hereby make application for an official ballot or ballots to be voted by me at such election if I am so physically incapacitated."

■ "Whether an enactment is directory or mandatory depends upon the legislative intention, to be ascertained from the nature and object of the act and the consequences which would result from any given construction." (*Serwinski v. Board of Election Commissioners* (1987), 156 Ill. App. 3d 257, 259, 509 N.E.2d 509.) In *Serwinski*, the court held the Election Code's oath and subscription requirements that a candidate must swear to his statement of candidacy to be mandatory because it activated the Code's perjury provisions.

Here the language is mandatory and the ballots should not have been issued based on the incomplete applications. The legislature intended that the procedures for obtaining and using an absentee ballot be scrupulously followed. The Election Code (Ill. Rev. Stat. 1989, ch. 46, par. 1—1 *et seq.*) provides that certain procedures must be followed on election day to enhance the integrity of the electoral process. Thus, when a person votes at the poll, he must announce his name and, if required, his residence to the election judge. An election judge then gives the voter one ballot, which the judge must initial. (Ill. Rev. Stat. 1989, ch. 46, par. 17—9.) After marking the ballot, the voter must then deliver it to an election judge, who at that point enters the name of the voter in the poll books and places the ballot into the ballot box (Ill. Rev. Stat. 1989, ch. 46, par. 17—12). When voting machines are used, which was the case in this election, the legislature has mandated that all the normal statutory procedures must be followed (Ill. Rev. Stat. 1989, ch. 46, par. 24—22) and has also required that certain further procedures be implemented to protect the integ-

rity of the voting process. For example, after a person votes on a voting machine, an election precinct official is to inspect the face of the voting machine to see that the machine has not been tampered with or injured. Ill. Rev. Stat. 1989, ch. 46, par. 24—8.

These procedures and protections are not available when one votes absentee. Thus the legislature has set forth a procedure with many safeguards in order to determine that only qualified absentee voters cast ballots at any given election. To vote absentee, a person must apply to the county clerk for a special absentee ballot, state the reason in this application why he must vote absentee, and declare that his statements are true under penalty of perjury. (Ill. Rev. Stat. 1989, ch. 46, par. 19—3.) If one must vote absentee because he or she is hospitalized, then the legislature has further conditioned receipt of an absentee ballot on the procurement of a certificate of the applicant's physician, who must state that he does not expect the voter to be released from the hospital on or before election day. (Ill. Rev. Stat. 1989, ch. 46, par. 19—13.) Therefore, given the language of the statute, its perjury provisions, and the concern of the legislature to safeguard the electoral process in setting forth such procedures for absentee voting, we hold the language of section 19—3 to require those who apply for absentee ballots based on physical incapacity to state the reason therefor.

On appeal, plaintiff did not challenge the trial court's ruling that Amy Ciaccio's vote should not be counted. Under the Election Code (Ill. Rev. Stat. 1989, ch. 46, par. 6—27), Ms. Ciaccio did not qualify to vote in the fifth ward election because she was not registered in the precinct in which she resided. Furthermore, the plaintiff stipulated that Anthony Poulos' vote should not be counted since it appeared that he never signed his vote application.

The trial court properly deducted the faulty ballots on a *pro rata* basis where it was possible to do so. Where the portion of votes containing illegal ballots can be identified with certainty and proof of irregularities in voting are not such as to justify a disenfranchisement of all voters in a given precinct, it is proper to apportion the illegal ballots instead of excluding the entire vote. *Thornton v. Gardner* (1964), 30 Ill. 2d 234, 195 N.E.2d 723; *Frese v. Camferdam* (1979), 76 Ill. App. 3d 68, 394 N.E.2d 845.

The judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

McCUSKEY and SLATER, JJ., concur.