# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Schwallenstecker v. Rull, 2012 IL App (4th) 120754**

---

| | |
|---|---|
| Appellate Court Caption | OLIVER GORDON SCHWALLENSTECKER, Plaintiff-Appellee, v. GARY R. RULL, Defendant-Appellant, and PETER DUNCAN, as County Clerk of Macoupin County, Defendant. |
| District & No. | Fourth District<br>Docket No. 4-12-0754 |
| Filed | October 2, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The absentee ballots submitted by the residents of a nursing home in a primary election were invalid on the ground that the residents gave their absentee ballots to election judges for delivery to the county clerk's office rather than following the mandatory requirement of section 19-6 of the Election Code that the ballots be submitted in person, by mail, or delivery by an authorized spouse, parent, child, brother, or sister or a company licensed as a motor carrier of property engaged in the business of making deliveries. |
| Decision Under Review | Appeal from the Circuit Court of Macoupin County, No. 12-MR-11; the Hon. John E. Childress, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

James P. Baker, of Baker, Baker & Krajewski, LLC, of Springfield, for appellant.

Herman G. Bodewes and Christopher E. Sherer, both of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellee.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.

Presiding Justice Turner and Justice Appleton concurred in the judgment and opinion.


## OPINION

¶ 1 This appeal concerns absentee voting in the March 20, 2012, general primary election for Democratic nominees to the Macoupin County board. On August 3, 2012, the trial court invalidated 19 absentee ballots in that election and entered summary judgment for plaintiff, Oliver Gordon Schwallenstecker, declaring him–instead of defendant, Gary R. Rull–one of two Democratic nominees to the county board.

¶ 2 Rull appeals, arguing the trial court erred in finding the ballots invalid. We disagree and affirm.


¶ 3       I. BACKGROUND

¶ 4 Three Democrats from County Board District 2 ran in the March 20, 2012, primary: Schwallenstecker, Rull, and Francis Wieseman. Each voter was allowed to vote for two candidates. The two candidates with the most votes would receive nominations and appear on the November general-election ballot.

¶ 5 Schwallenstecker's election contest concerned absentee voting by residents of the South Lawn Sheltered Care nursing home in Bunker Hill. (Rull owns South Lawn Sheltered Care but is not alleged to have influenced the voting there.) Defendant Pete Duncan, Macoupin County clerk, worked with the nursing home's activity director to make applications for absentee ballots and absentee ballots available to South Lawn Sheltered Care residents who were registered Democratic voters. No resident had applied for an absentee ballot, but the procedure was consistent with past practices of the nursing home and the county clerk's office. The activity director confirmed the current residency of Macoupin County voters whose registration listed South Lawn Sheltered Care as their address. The county clerk's office arranged for election judges to provide applications for absentee ballots to these voters in person at the South Lawn Sheltered Care facility on March 19, 2012.

¶ 6 On March 19, 2012, election judges acting on directions from the county clerk's office

oversaw and administered absentee voting at South Lawn Sheltered Care. Twenty of the nursing home's residents filled out applications for absentee ballots; thirteen of them failed to identify their party affiliation in their applications. The voters returned completed applications to the election judges. The election judges then provided them with absentee ballots. The voters returned completed ballots to the election judges, who delivered them, along with the applications, to the county clerk's office. One of the residents' ballots was rejected for unidentified reasons and not included in the election results; the other 19 were counted.

¶ 7 According to the official results of the primary, Wieseman received 345 votes, Rull 298, and Schwallenstecker 289. From the 21 absentee, early, and grace-period voters whose votes were counted in the precinct where South Lawn Sheltered Care is located (19 of whom were residents of the nursing home), Rull received 20 votes and Schwallenstecker received 5.

¶ 8 On April 16, 2012, Schwallenstecker filed his amended petition contesting the election. Schwallenstecker alleged Election Code (10 ILCS 5/1-1 to 30-3 (West 2010)) violations relating to absentee voting at the South Lawn Sheltered Care nursing home. Specifically, in relevant part, Schwallenstecker complained that, due to violations of sections 19-3 (requiring, among other things, identification of party affiliation on applications for absentee ballots) and 19-6 (prescribing procedures for returning completed absentee ballots to the county clerk's office) of the Election Code (10 ILCS 5/19-3, 19-6 (West 2010)), the 19 absentee ballots of South Lawn Sheltered Care residents were invalid.

¶ 9 On June 7, 2012, the trial court denied Rull's and Duncan's motions to dismiss. On July 20, 2012, Schwallenstecker filed his motion for summary judgment. That same day, the parties entered into an agreed evidentiary stipulation of facts. On July 23, 2012, Rull filed his motion for summary judgment.

¶ 10 On August 3, 2012, the trial court entered a written order granting summary judgment in favor of Schwallenstecker. The court found violations of mandatory provisions of sections 19-3 and 19-6 that invalidated the absentee votes of the South Lawn Sheltered Care residents. Discounting those votes, the court found that Schwallenstecker beat Rull for the second Democratic nomination to the county board, such that Schwallenstecker and Wieseman, not Rull, should appear on the general-election ballot.

¶ 11 On August 15, 2012, Rull filed his notice of appeal. On August 22, 2012, Rull moved in this court for an accelerated appeal according to a stipulated briefing schedule. On August 30, 2012, this court granted that motion.

¶ 12 On August 23, 2012, Rull moved in the trial court for a stay of the summary judgment order. Rull later withdrew this motion.

¶ 13                                        II. ANALYSIS

¶ 14 On appeal, Rull argues the trial court erred in finding the South Lawn Sheltered Care residents' absentee ballots invalid. We disagree.

¶ 15 Violations of the procedure for submitting absentee ballots to the county clerk as prescribed in section 19-6 of the Election Code (10 ILCS 5/19-6 (West 2010)) are

determinative in this case. The parties agree that the procedure employed at South Lawn Sheltered Care on March 19, 2012, diverged from the statutory rules. The statute allows absentee voters to submit their ballots either by mail or by delivery to the relevant election authority. 10 ILCS 5/19-6 (West 2010). Absentee voters may deliver their ballots to the clerk's office personally or else authorize their spouse, parent, child, brother, or sister or "a company licensed as a motor carrier of property ***, which is engaged in the business of making deliveries," to deliver them. 10 ILCS 5/19-6 (West 2010). Except in the case of a physically incapacitated voter, an absentee ballot cannot be delivered in any other manner. *People v. Hays*, 142 Ill. App. 3d 754, 758, 492 N.E.2d 213, 215 (1986). In this case, the absentee voters at South Lawn Sheltered Care gave their ballots to election judges for delivery to the county clerk's office. This was an improper method of submitting absentee ballots under section 19-6.

¶ 16    The parties disagree as to these violations' effect on the ballots' validity. That question turns on whether section 19-6's provisions are mandatory or directory. "Failure to comply with a mandatory provision [of the Election Code] renders the affected ballots void, whereas technical violations of directory provisions do not affect the validity of the affected ballots." *Pullen v. Mulligan*, 138 Ill. 2d 21, 46, 561 N.E.2d 585, 595 (1990). Whether a statute is mandatory or directory depends on the legislature's intent, "which is ascertained by examining the nature and object of the statute and the consequences which would result from any given construction." *Id.* On one hand, a statute in the Election Code may generally be given a mandatory construction if it "expressly states that failure to act in the manner set out in the statute will void the ballot." *Id.* On the other, a statute may generally be construed as directory if it "simply prescribes the performance of certain acts in a specific manner, and does not expressly state that compliance is essential to the validity of the ballot." *Id.*, 561 N.E.2d at 596. That is, "[i]n construing statutory provisions regulating elections the courts generally have tended to hold directory those requirements as to which the legislature has not clearly indicated a contrary intention, particularly where such requirements do not contribute substantially to the integrity of the election process." (Internal quotation marks omitted.) *Id.* at 47, 561 N.E.2d at 596.

¶ 17    Courts have construed the ballot-submission requirements of section 19-6 as mandatory because they help ensure the integrity of absentee voting in elections. See, *e.g.*, *Hays*, 142 Ill. App. 3d at 758, 492 N.E.2d at 215 ("The methods for return of absentee ballots required by section 19-6 are not mere procedural formalities. Their purpose is to safeguard the integrity of the election process by depriving unauthorized persons of the opportunity to tamper with ballots after they have been completed."). Noncompliance with section 19-6 allows the possibility that an unauthorized person–a person other than the voter or a relative or shipping company identified by the voter–can tamper with an absentee ballot before it is delivered to the election office and thus renders a ballot invalid; no actual fraud needs to be shown or even alleged. See *Frese v. Camferdam*, 76 Ill. App. 3d 68, 73, 394 N.E.2d 845, 848 (1979) (invalidating absentee ballots that voters entrusted to candidates for delivery to the election office); *Clark v. Quick*, 377 Ill. 424, 430, 36 N.E.2d 563, 566 (1941) ("If [due to delivery by an unauthorized person] the opportunity [for tampering with absentee ballots] has been present the presumption seems to follow that it has been used.").

¶ 18    Rull asks us to find that the provisions of section 19-6 are directory in this case because, unlike previous cases, the election judges entrusted with delivering the absentee voters' ballots to the county clerk lacked the obvious incentive to interfere with the votes. *Cf. Frese*, 76 Ill. App. 3d at 73, 394 N.E.2d at 848 (holding the procedure prescribed by section 19-6 was mandatory where absentee ballots were given to candidates for delivery to the election office); *Clark*, 377 Ill. at 429-30, 36 N.E.2d at 566 (Third District, holding statutory ballot-submission procedure was mandatory where absentee ballots were given to party officials for delivery to the election office). Classification of Election Code provisions as mandatory or directory, however, should not be undertaken on a case-by-case basis because the appropriate question–whether the statute contributes substantially to the integrity of the election process–concerns the statute's overall role in ensuring honest elections, notwithstanding the particular circumstances of any specific case. Moreover, as the trial court noted in its written summary-judgment order, the violations of section 19-6 presented the election judges in this case with the *opportunity* to tamper with the absentee ballots regardless of whether they may have been less likely or predisposed than others to do so. That fact is sufficient to call the ballots' validity into question.

¶ 19    Because the mandatory provisions of section 19-6 regarding the submission of absentee ballots were violated, the votes of the 19 South Lawn Sheltered Care residents were invalid. Ordinarily, when the votes cast by invalid ballots cannot be identified, the votes are apportioned among the candidates by reference to their vote totals and "surcharged" against those totals accordingly. See *Frese*, 76 Ill. App. 3d at 76, 394 N.E.2d at 850-51. Here, it is clear that, discounting the illegal absentee votes even without apportioning them, Schwallenstecker beat Rull in the primary. Only 2 of the 21 absentee ballots were valid; the 21 ballots showed 20 votes for Rull and 5 for Schwallenstecker. (Each voter was allowed to vote for two candidates.) Assuming, in the most generous possible scenario, those two voters voted for Rull and not Schwallenstecker, 18 votes should be taken from Rull's final tally and 5 from Schwallenstecker's. That would leave Rull with 280 votes and Schwallenstecker 284. The trial court did not err in granting summary judgment for Schwallenstecker and declaring him the second Democratic nominee from his district for the Macoupin County board.

¶ 20                                    III. CONCLUSION

¶ 21    For the foregoing reasons, we affirm the trial court's judgment.

¶ 22    Affirmed.