STEPHEN J. WILLIAMS *et al.*

*v.*

GEORGE W. POTTER *et al.*

*Filed at Ottawa November 14, 1885.*

1. ELECTIONS—*town elections—restriction as to number of precincts in a town.* While under the general Election law, for other purposes, there may be several *precincts* in a township, yet for the purpose of a town election; merely, there can be but one precinct, which is co-extensive with the boundary of the town.

2. SAME—*of several polling places for town purposes.* While for annual town elections the whole town constitutes but one precinct, yet under certain circumstances there may be several polls or voting places where votes may be lawfully received in the same town. But they must all be regarded as constituting one precinct, and each polling place is open to all voters of the town alike, subject, only, to the limitation that no one shall vote at more than one place.

3. SAME—*by whom the polling places may be established—prerequisites to the establishing of more than one in the same town—as to designating the places.* The township authorities have no power to establish their polling places where more than one is required. That can only be done by the county board, and it can not establish more than one, except where it appears from

the last preceding general election the number of voters in the township exceeded three hundred, and their order creating an additional polling place must designate the place where it is to be held.

4. In this case a petition was presented to the county board, setting forth that there was but one election precinct in a town, and that a large number of the voters of the town resided and worked south and east of a certain river, who were not able to bear the expense of transportation across the river to the then existing precinct, and that the public interest required there should be two precincts in the town, and prayed for a new one to be established for all voters south and east of the river. This petition was referred to a committee, who reported recommending that the prayer thereof be granted, and the report, on motion, was adopted. No place for holding the polls was designated and no further action taken, and it did not appear that over three hundred votes had been cast in the town at the preceding general election. The town clerk, in giving notice of the succeeding annual town election, named a school house in district No. 9, as the place for holding the election in the territory south and east of the river: *Held,* that the school house named was not designated by the county board as a polling place, and that votes cast at such place could not be counted, they being cast at a place unauthorized by law.

5. SAME—*establishing a new precinct—whether the precinct thereby becomes a town polling place.* The county board has ample authority to make additional precincts in a town, for general election purposes, whenever it thinks the public convenience so demands, without regard to the number of the voters in the town. But the establishment of such new precinct will not make it an additional poll for receiving votes at town meetings unless the county board shall so designate it, and fix the place at which the polls shall be held.

6. SAME—*canvassing votes—as to town elections, and elections under the general Election law.* In the canvassing and returning of votes under the general Election law, each precinct is wholly independent of the others, and makes its own returns directly to the county clerk, while, in the case of mere polling places for town elections, after the close of the polls, the ballot boxes of the subordinate polls are taken to the chief polling place, where the town clerk officiates, and they are all then opened and canvassed, the same as if the ballots had all been deposited in one box.

APPEAL from the County Court of Will county; the Hon. HIRAM T. GILBERT, Judge, presiding.

Messrs. OLIN & PHELPS, and Messrs. HALEY & O'DONNELL, for the appellants.

Mr. C. W. BROWN, and Mr. A. F. MATHER, for the appellees.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

At the spring election held in the township of DuPage, Will county, on the 7th day of April, 1885, the appellants, Stephen G. Williams, Christian Flugga and John Burkhardt, were, respectively, candidates for the offices of supervisor, collector and justice of the peace of said township, and the appellees, George W. Potter, Seymour Buel and Albert M. Armstrong, were, respectively, opposing candidates for said offices. Upon a canvass of the votes the appellants were all declared elected. The appellees thereupon filed their several petitions in the county court to contest the election of appellants. As the same questions were involved in all the cases, by consent of parties they were consolidated, and tried as one case. Upon the hearing the county court found such irregularities had occurred in calling and conducting the election, as to vitiate it altogether, and entered a decree accordingly. This appeal is prosecuted by the defendants in the petition to reverse that order.

The rights of the successful candidates, as declared by the canvassing board, are assailed on a number of grounds, two of which, only, are necessary to be considered, as they fully cover the frictional points in the case. It is claimed, first, that the votes cast at district No. 9, one of the polling places at said election, are void for the reason there was no authority for holding an election at that place; secondly, that the officers conducting the election were guilty of such improper conduct and irregularities, particularly after the closing of the polls, as to render the election void.

It appears that prior to the 15th of September, 1884, the only polling place in the town was at the Sprague school house, in school district No. 4. On that day the following petition, signed by one hundred voters, was presented to the board of supervisors:

"The undersigned, citizens, property owners and tax-payers of the town of DuPage, in said Will county, show unto your honorable body that there is but one election precinct in said town; that a large number of the voters of said township reside and work south and south-east of the Des Plaines river as laborers in the stone quarries in that location, who are not able to bear the expense of transportation across the river to the present precinct; that we believe that the interests of the voting population of said town require that there should be two election precincts in said town, and that a new election precinct should be established for all voters of said township south and east of the Des Plaines river. We therefore pray your honorable body to establish a new and second election precinct for said town, to embrace all the voters south and east of the Des Plaines river. Elections to be held at the school house of school district No. 9."

The petition was referred to a committee, who, on the 17th, made a report recommending that the prayer thereof be granted. It was thereupon moved by one of the members of the board that the report be adopted, which motion, upon a vote being taken, was declared passed. No further action was ever taken by the board in respect to the petition, but the record shows that the town clerk, on the 26th day of March, 1885, published the following notice:

"*Annual Town Meeting.*—Notice is hereby given to the citizens, legal voters of the town of DuPage, residing south and east of the Des Plaines river, in the county of Will, and State of Illinois, that the annual town meeting of said town will be held at the school house, district No. 9, in said town, on Tuesday, April 7th, 1885, being the first Tuesday in said month, for the purposes following, viz:"

Then follows a specification of the objects of the meeting, and the signature of the clerk, in his official character. If the votes cast at the polling place specified in this notice are

to be counted, the appellants received a majority of the legal votes cast.

Paragraph 51, chapter 139, of the Revised Statutes, fixes the time of holding the annual town meetings for the election of officers, etc., on the second Tuesday of April in each year, *at the places appointed* for such meetings. Paragraph 52 provides for notice of town meetings, and specifies the kind of notice, the manner of giving it, and the person or persons by whom it is to be given. Paragraph 53 provides that for the purposes of town meetings each town shall constitute an election precinct. Paragraph 54 declares that "the place of holding elections shall be some convenient place in the town, *to be fixed by the electors* at their annual town meetings." Paragraph 55 provides for the manner of changing the place of holding town meetings, which can only be done on petition, and by a majority vote at a town meeting, after due notice of such contemplated change and of the time of voting thereon. Paragraph 56 makes the supervisor, assessor and collector *ex officio* judges of elections in their town, except as otherwise provided by law. Paragraph 61 provides for the election of town officers at the annual town meeting. Paragraph 62 points out the time and manner of organizing such meetings. Paragraph 67 provides as follows: "The town shall supply a suitable ballot box or boxes, to be kept and used in like manner as ballot boxes in other elections. In * * * any organized town where the number of votes at the last preceding general election exceeded three hundred, the county board may require one or more additional ballot boxes and places for the reception of votes to be provided, which places *shall be selected* with reference to the convenience of the electors of the town, and *shall* designate at which of said polling places the town clerk shall act as clerk of the election; and such polling place, when so designated, shall be the place of transacting the miscellaneous business of the town; and when several places are so provided, the electors present shall

choose from their number, one assistant moderator and one assistant clerk for each additional ballot box, to receive the votes therein, who shall take the same oath and be subject to the same penalties as the moderator and clerk, and shall be under the direction of the moderator. At the closing of the polls, all the said ballot boxes shall be brought together at the polling place where the town clerk acts as clerk of the election, and the votes shall be canvassed at the same time and in the same manner, and return thereof made the same, as if all the votes had been cast in the same box; * * * and it shall be the duty of the town clerk, or if there be no town clerk it shall be the duty of the county clerk, to post up in three of the most public places in the town, a notice of each of the places in the town *where the county board* have directed and required the election to be held."

The foregoing provisions, it is believed, are all that have any special bearing on this case. They apply to town elections exclusively, and this fact must be kept constantly in view in the consideration of this case. Elections for other purposes, such as for State and county officers, are governed by the general Election law applicable to counties under township organization, which consists of different and independent statutory provisions, and the whole difficulty in this case has evidently arisen from confounding the two systems pertaining to elections in counties under township organization.

The record conclusively shows there was but one legal voting place in the township for town officers, and that was at Sprague school house, district No. 4. While, under the general Election law, for other purposes there may be several *precincts* in a township, yet for the purposes of a town election, merely, there is but one precinct,—or, in other words, but one territorial boundary limiting the right to vote, and that is co-extensive with the township itself. While this is so, there may, under certain circumstances, be several polls or places where votes may be lawfully received, in the same

township, but they are all to be regarded as in the same precinct. They are established for the convenience of the voters, and each polling place is open to all the voters alike, subject to the limitation, of course, that no one is permitted to vote at more than one place at the same election. The town authorities, however, have no power to establish these polling places. That can only be done by the county board, and it can not establish more than one, except where it appears, from the last preceding general election, the number of votes in the township exceeded three hundred. This clearly appears from paragraph 67, above cited. The record in this case, however, affirmatively shows there was not the requisite number of votes in the township to warrant the establishing of more than one place for receiving votes at such town election. But suppose we might say that whether such number existed or not was a *quasi* judicial question, the determination of which, under the statute, devolved upon the county board, and that that tribunal having decided it, we must accept its decision as conclusive,—without expressing any opinion upon the soundness of this proposition, the question then arises, did the county board designate the school house in district No. 9 as an additional poll or place to receive votes. The only ground for such a claim is the petition above set forth, the report of the committee approving it, and a vote by the board approving the report of the committee and accepting the same. But suppose we could say this was equivalent to ordering what the petitioners had asked, which, to say the least of it, is by no means free from doubt, did such order establish an additional polling place for township purposes? If so, it certainly accomplished something the petitioners had not asked to be done. What the petitioners asked was the establishment of a *new election precinct*. But that is quite a different thing, and is something with which the township had nothing to do. The establishment of new or additional precincts is provided for under the general Election law. (See paragraph 32

of chapter 46.) The county board has ample authority to make such additional precincts for general election purposes whenever it thinks the convenience of the voters requires it, without regard to their number, and the establishment of such a precinct would not make it an additional poll for receiving votes at town meetings unless the county board should so designate it. As to polling places for town purposes, merely, the town itself selects where there is but one, and if additional ones are required, the county board *designates* the places and the town *provides* them, together with the additional ballot boxes, in conformity with paragraph 67, chapter 139, above cited. But as to providing voting places or additional ballot boxes in the new precincts, the town has nothing to do with it. Moreover, the mode of conducting the election, canvassing and making returns thereof, at a mere polling place for township purposes, is altogether unlike that which the law requires for a precinct election. In the latter case each precinct is wholly independent of all the others, and makes its own returns directly to the clerk of the county court. In the case of mere polling places, as soon as the polls are closed the ballot boxes of the subordinate polls are taken to the chief polling place where the town clerk officiates, and they are all there opened and canvassed just as if they had all been deposited in one box, and the result declared and recorded in the presence of the assembled voters.

It is clear, then, beyond all question, that the school house in district No. 9 was never designated or appointed by the county board as a polling place for township purposes, and it is a conceded fact there was not a sufficient number of voters in the township to warrant such appointment by the county board. The case made by the record, then, is simply this: A number of voters of the township assemble at a place unauthorized by law, organize, and hold an election for town officers,—and the question is, shall the votes cast at such election be counted. The question is too plain to admit of

serious argument. It is clear, upon the plainest principles of law, they can not be so counted. The whole thing, however well intended, was, in contemplation of law, illegal and void,—indeed, a mere farce;—and we agree with the trial court in holding that it was such a grave departure from the requirements of the law as to vitiate the election altogether.

The judgment will be affirmed.

*Judgment affirmed.*