(No. 35176.—)

THE PEOPLE *ex rel.* Carl M. Schwartz, Commissioner of Highways, Appellee, *vs.* ALBERT R. FAGERHOLM, Town Clerk, Appellant.—(WOODROW WOOD *et al.,* Intervenors, Separate Appellants.)

*Opinion filed May 22, 1959—Rehearing denied September 22, 1959.*

Davis and Bristow, JJ., dissenting.

William C. O'Brien, of Aurora, (Wilson D. Burnell, of counsel,) for appellant, and Sidney D. Podolsky, of Aurora, for intervenors, separate appellants.

Roy J. Solfisburg, Sr., of Aurora, for appellee.

Mr. Justice House delivered the opinion of the court:

This is an appeal from a judgment order of the circuit court of Kane County for the issuance of a writ of *mandamus* to compel the respondent, the town clerk for the

town of Aurora, to perform certain official duties pertaining to the issuance of bonds for the construction of two township bridges. A constitutional question was presented to and passed upon by the trial court.

At the annual meeting of the town of Aurora on April 1, 1958, a special election was held at the request of the highway commissioner for the borrowing of money for the construction of two township bridges. The borrowing of $1,553,050 was approved by secret ballot vote, the result of which was 299 for the proposition, 288 against, and six spoiled ballots.

The town clerk refused to join with the highway commissioner in the issuance of the bonds. The commissioner, therefore, on May 14, 1958, originated this action by filing a petition for a writ of *mandamus* to compel the clerk to join in the issuance of the bonds. The town clerk in his answer alleged that section 18—17 of the Election Code (Ill. Rev. Stat. 1957, chap. 46, par. 18—17,) was applicable to the special election and since the election was not held in conformity therewith, he asked that the prayer of the petition be denied.

The intervenors, Woodrow Wood, W. P. Mast and Paul Egan, filed a motion for leave to intervene stating that the highway commissioner and town clerk were both proponents of the proposition to construct the bridges and that the suit is a friendly one. They were permitted to intervene as defendants upon stipulation of the parties and after the court had found that they are representative of all residents and taxpayers of the township. The intervenors in their amended petition merely charge technical irregularities in the conduct of the election. Their amended petition was ordered to stand as their answer.

A motion to strike certain paragraphs of respondent's answer was filed by the petitioner. The motion alleged that section 18—17 of the Election Code is not applicable to the type of election here involved; and that if it is appli-

cable, it is contrary to the State and Federal constitutions. Petitioner also filed a motion to strike certain paragraphs of the intervenors' amended answer. The intervenors then moved for a summary judgment.

The court entered an order denying intervenors' motions, granted petitioner's motion and ordered the writ of *mandamus* to issue.

The intervenors contend that when Judge Poust rendered his decision he was in DeKalb County and not Kane County where the proceedings were held. They argue that since this judicial function was not exercised in the proper forum, the purported order is null and void.

The record shows that the entire cause was heard in Kane County. On January 6, 1959, Judge Poust appeared in the court room where the cause had been heard and orally announced that he would deny defendant-intervenors' motions and would grant petitioner's motion. He then requested that a draft order be prepared. A form of order was submitted to Judge Poust on January 8 in DeKalb County, where he approved it by placing his signature thereon, and it was filed for record that same day with the circuit clerk of Kane County.

A judgment is generally defined as "the official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination." (Black's Law Dictionary, 4th ed.) It is the expression of the court's decision that constitutes the rendition of the judgment. The real and obvious purpose of the rendition is to show the litigants and persons interested in the cause that the judge has arrived at a decision and what the decision is. It is this reflection of the judge's state of mind that makes the judgment or decree effective.

Where, when and how this expression of decision should be made before it can be considered a rendition has been the subject of many statutes, rules and decisions. (30 Am.

Jur., Judgments, secs. 48-53; 4A C.J.S. Appeal and Error, sec. 445; 49 C.J.S., Judgments, secs. 100-102, 113, 114; 4 A.L.R.2d 579. Thus, in some jurisdictions it must be in writing before it may be considered a rendition; while in others, oral expression by the judge is sufficient. (49 C.J.S., Judgments, secs. 102, 113.) In all jurisdictions, however, the expression of the judge's decision must be in words. In addition to the requirement that the decision be in words, it is necessary that the decision be made publicly and at the situs of the proceedings before it will be considered a rendition. There is a divergence of practice, however, as to what is sufficient to make the decision public. Hence, in some jurisdictions it is sufficient if the pronouncement of decision is made in open court, in others, if the clerk is authorized to enter the determination on the minutes and, in still others, if the decree or judgment is filed and becomes a part of the public record of the case. (4A C.J.S., Appeal and Error, sec. 445.) In final analysis then, there are at least three essential elements that must coincide in order to have a rendition: namely, the decision must be expressed publicly, in words, and at the situs of the proceeding.

Whether the manifestation of decision must be written or merely oral to give it effect has long been recognized in this State to depend upon whether the decision is a judgment at law or a decree in equity. In the case of a declaratory judgment, it is determined by the nature of the relief declared. At law, a judgment becomes effective at the time it is pronounced. (*Chicago Great Western Railroad Co.* v. *Ashelford,* 268 Ill. 87; *Anastaplo* v. *Radford,* 14 Ill.2d 526.) In equity the mere oral pronouncement of a decision is of no effect until the order is reduced to writing, approved by the chancellor and filed for record. (*Miller* v. *Miller,* 376 Ill. 628; *Anastaplo* v. *Radford,* 14 Ill.2d 526.) In the case of a declaratory judgment, the decision is effective only after it is reduced to writing, approved and filed for record, if the nature of the relief declared is equitable;

while it is effective at the time it is pronounced, if the nature of the relief declared is legal. *Freeport Motor Casualty Co.* v. *Tharp,* 406 Ill. 295.

We are concerned with the question of whether a purported judgment order, approved by the presiding judge in a place other than the situs of the proceeding, can be considered an effective judgment after it has been filed with the clerk of the court.

It is common practice for a trial judge to send his decision to the clerk, directing him to file and enter it and to notify the attorneys in the case. When a judge takes a matter under advisement he continues to hear other cases and decides the matter under advisement when his work schedule permits. In the down-State circuits, however, he may be many miles away from the place where the cause is pending when he reaches a determination. If he cannot send the clerk his decision, he may have to drive 50 or more miles to merely perform the mechanical act of signing the decree or announcing his judgment and then return to the place where he is presently sitting. His only alternative would be to wait until he returns to the court in his normal schedule of sittings before signing the decree or announcing his judgment.

The law favors simplicity and speed in the determination of an action, when in harmony with the effective protection of the interests of the parties and the public. There can be no argument but that simplicity and speed would be enhanced if the presiding judge be permitted to send his decretal or judgment order to the clerk to be filed for record. The only question then is whether this gain in simplicity and speed is consonant with the protection of the interest of the litigants and the public. In order to protect such interests it is necessary that they be apprised that a decision has been made by the judge and what the decision is. They would be so apprised when it has been expressed publicly, in words and at the situs of the case.

We are of the opinion that a judgment or decree approved by the presiding judge in a place other than the situs of the proceeding becomes an effective judgment or decree at the time it is filed with the clerk of the court. Such a decree or judgment is an expression of the judge's decision in written words and it becomes public at the situs of the proceeding when it is filed with the clerk of the court. It is the coincidence of these elements and not the place where the judge signs the judgment or decree that apprises the parties and the public of the decision.

Trial judges have generally interpreted the holding in *Freeport Motor Casualty Co.* v. *Tharp,* 406 Ill. 295, to mean that they must return to the situs of the cause to pronounce a judgment or approve a decree. There it was stated that until there is a pronouncement in open court the judgment order cannot be considered the judgment of the court. To require an oral pronouncement of a judgment at law loses sight of the purpose of a rendition, as hereinbefore stated, and would at times sacrifice simplicity and speed in the determination of the action without any resulting benefit to the parties or general public to offset this loss.

We are of the opinion that a judgment at law becomes effective when it is announced in open court, or in the absence of such pronouncement, when it is reduced to writing, approved by the judge and filed for record. To the extent that the *Freeport case* is inconsistent with the views herein expressed, it is overruled.

In *Jackman* v. *North,* 398 Ill. 90, also cited by intervenors, the chancellor signed a decree in Kankakee County although the case had been heard in Will County. He had previously, while in Will County, directed the clerk to make certain minutes concerning the decision and decree he wished to make in the case. The court, while recognizing the general rule as to when a decree becomes effective, held that since the rights of the parties had been determined in Will

County and there was no modification or alteration of this determination, the signing of the decree in Kankakee was not improper. We are in accord with the result reached on this point in *Jackman*, but do not adhere to the implication that the decree would have been void had the chancellor not made a prior oral determination in Will County which remained unaltered. A decree becomes effective when it has been reduced to writing, approved by the chancellor and filed for record at the situs of the proceeding; the place where he approves the draft decree is immaterial.

Applying the foregoing reasoning to the case at bar, we hold that the judgment order was not void nor was it erroneously rendered. It was the coincidence of Judge Poust's decision being expressed publicly, in written words, and at the court in Kane County by filing the order with the clerk thereof that apprised the parties and the public he had made the decision and what it was. His presence would have added nothing.

The substantive issue raised by this appeal is whether the election on the proposition to borrow money must be conducted in a single election precinct, the boundaries of which are coextensive with the township, and with the single polling place being the place of the last regular town meeting; or whether it must be conducted at the several polling places located in the established election precincts within the township. It is admitted that in this election the entire township was treated as a single election precinct and the only polling place was the place where the last regular town meeting was held.

The highway commissioner proceeded under section 61 of the Roads and Bridges Act. (Ill. Rev. Stat. 1957, chap. 121, par. 67.) This section empowers him to borrow money and issue bonds after the proposition has been approved at a township election. It states the town shall, for the purposes of the special election mentioned therein, constitute

an election precinct and that the election shall be held at the place of the last regular town meeting. While it is not disputed that there may be several election precincts in a township, petitioner contends that for purposes of a town election there can be but one precinct and that section 61 restates this rule.

Section 61 fails to provide any guide or mode of conducting the election. The Township Organization Act (Ill. Rev. Stat. 1957, chap. 139, pars. 1 et seq.) likewise is silent as to how an election on such a public proposition should be conducted. Since there is a total lack of guidance in the two acts, it is necessary to turn to the Election Code (Ill. Rev. Stat. 1957, chap. 46, pars. 1—1 et seq.) which provides for elections generally, to ascertain whether its provisions are pertinent.

In section 11—1 of the Election Code (Ill. Rev. Stat. 1957, chap. 46, par. 11—1) the legislature initially fixes each town as an election precinct for counties under township oganization. It has in sections 11—2 and 11—3 provided for the division of a precinct fixed by township lines into precincts based on population and has delegated the power to so change election precincts to the county board and the board of election commissioners. The county board is to fix election precincts so they contain not less than 500 nor more than 800 voters. (Par. 11—2.) In cities, villages and incorporated towns which have adopted article 6 of the Election Code, the board of election commissioners is to fix election precincts so they contain as nearly as practicable 400 qualified voters and not over 600. Thus, a town is a single election precinct unless and until further election precincts are fixed therein by the county board or the board of election commissioners.

It will be noted from the foregoing that the controversy revolves primarily around the word "precinct." It has come to have the generally accepted meaning of a compact geo-

graphical unit for voting purposes in which a single polling place is located. Voters residing in the precinct may vote only at the polling place located therein. Whether the geographical area be called a "district" or "precinct," as in section 11—2, its legal significance is not changed, since the legislature has there used the words interchangeably.

We attach no added significance to the statement in section 61 of the Roads and Bridges Act that each township shall constitute an election precinct. The identical provision is in section 11—1 of the Election Code and, as hereinbefore stated, the two sections following (11—2 and 11—3) provide for alteration of the original precinct into the appropriate number of precincts based on population.

We must read the several acts in conjunction to gather the legislative intent. Construing the Election Code, the Road and Bridges Act, and the Township Organization Act together, we are of the opinion that the geographical area designated an election precinct is to be the same for all elections covered by these three acts and attended with the same legal significance. Thus, a township is a single election precinct unless and until further election precincts are fixed under the several acts.

The record does not affirmatively show how many precincts are contained within Aurora Township. We take judicial notice, however, that the population of the town of Aurora is such that there is more than one precinct established therein. It is admitted that the city of Aurora located within Aurora Township has adopted the provisions of article 6 of the Election Code. It is further admitted that the election was not conducted under section 18—17 (Ill. Rev. Stat. 1957, chap. 46, par. 18—17,) which provides that in township elections where a part of the town lies within a city which has adopted article 6 of the Election Code, and a part lies without such city, the board of election commissioners shall have charge of the election

within the part of that town where article 6 is in force and the legal authorities of such town shall have charge of the election in that part of the town where article 6 is not in force.

The rule of construction contended for by petitioner, set out in such cases as *People ex rel. Dixon* v. *Community Unit School Dist.* 2 Ill.2d 454; *Co-ordinated Transport, Inc.* v. *Barrett,* 412 Ill. 321; and *Rosehill Cemetery Co.* v. *Lueder,* 406 Ill. 458, that when acts are in irreconcilable conflict the one subsequent in point of time must prevail, is of little avail in a case such as this. The Election Code is a codification and re-arrangement of existing laws. It has been amended and strengthened from time to time under the constitutional admonition to provide free and equal elections. Its basic intent is to give all persons an opportunity to vote and to prevent fraud. It seems plain to us that the acts in question here are compatible and that one does not repeal portions of the other by implication. To construe section 61 of the Roads and Bridges Act as petitioner would have us do, would defeat the basic concept of a free and equal election. Obviously, the great number of people who reside within Aurora Township could not vote at a single polling place if all, or substantially all, of the electors chose to exercise their right to vote upon this public question. We cannot read into section 61 any such legislative intent.

Petitioner next contends that section 18—17 of the Election Code is unconstitutional as applied to this election, and the trial court so held. This is based on the theory that holding elections under article 6 increased costs of town elections and that the residents and electors of Aurora Township, residing outside the city limits of Aurora, were denied equal protection in that they were not given an opportunity to vote upon the adoption of article 6. This same contention has been heretofore raised and rejected in

*Bolles* v. *Prince,* 250 Ill. 36. (See also *People ex rel. Mayes* v. *Wanek,* 241 Ill. 529.) We adhere to the pronouncement in those cases.

We are of the opinion that the election was invalid since it was not held in the established precincts within the town of Aurora and for the further reason that the board of election commissioners did not have charge of the election in that portion of the township lying within the city of Aurora.

While the question of holding an election in a township on a public proposition after multiple precincts have been established therein has not heretofore been presented to us, certain cases have been cited by petitioner which involved the election of township officers. Some of the language in this opinion is inconsistent with the holdings in *Williams* v. *Potter,* 114 Ill. 628; *People ex rel. Delaney.* v. *Markiewicz,* 225 Ill. 563, and *Smoda* v. *Gallagher,* 412 Ill. 271, each of which involved election of township officers. There have been many statutory changes since 1885 when the doctrine of these cases was first announced in the *Williams case.* We do not regard them as persuasive on the issue here presented.

Since the election was not held in conformity with the appropriate statutes the trial court erred in ordering the writ of *mandamus* to issue. The judgment order of the circuit court of Kane County is therefore reversed.

*Judgment reversed.*

Mr. JUSTICE DAVIS, dissenting:

I must dissent in that the court has superimposed its policy predilections over the clear language of section 61 of the Roads and Bridges Act, (Ill. Rev. Stat. 1957, chap. 121, par. 67,) and, under the guise of statutory construction, has judicially repealed that enactment and reversed its prior decision of *Chicago and Eastern Illinois Railroad Co.* v. *People ex rel. McCord,* 206 Ill. 296.

The opinion ignores the command of section 61 that

the special election here involved "shall be held at the place of the last regular town * * * meeting" and that each town "shall for the purposes of the special election * * * constitute an election precinct." In this section, the legislature has specifically prescribed how, when and where such special election shall be held and has prescribed the form of ballot to be used. It is complete within itself. Under the circumstances, I believe it is an abuse of judicial power for this court to hold "that the election was invalid since it was not held in the established pricincts within the town of Aurora."

In *McCord,* at pages 300 and 301, we stated: "The town meeting is designed to bring all of the electors of the town together in one assemblage, to discuss and consider any subject upon which the town may lawfully act. The powers of the electors when assembled in the regular annual town meeting are prescribed in section 3 of article 4 of the Township Organization Act, and when convened at a special town meeting are prescribed by the provisions of section 10 of article 6 of the same act. The power possessed by these meetings cannot be exercised by the electors by casting ballots at an election called and held in the different voting precincts in the town. The attempt to exercise the powers vested in the town meeting by a special election held in the different voting precincts of the town was illegal, and the tax levied by virtue of such election is void, * * *."

The opinion of the court has reversed *McCord* without making reference to it, and has recognized that the teachings of *Smoda* v. *Gallagher,* 412 Ill. 271, *People ex rel. Delaney* v. *Markiewicz,* 225 Ill. 563, and *Williams* v. *Potter,* 114 Ill. 628, are inconsistent with its language. In addition, it has abandoned the long recognized rule of statutory construction which holds that a statute subsequent in time must prevail over a prior one. *People ex rel. Dixon* v. *Community Unit School Dist.* 2 Ill.2d 454; *Rosehill Cemetery Co.* v. *Lueder,* 406 Ill. 458.

The court justifies this departure from established law on its "basic concept of a free and equal election," and in so doing forgets that it is for the legislature to determine, within constitutional limitations, the public policy of the State in regard to such elections.

The legislature has, with certain exceptions, exempted school elections from the provisions of the Election Code and this court has found no fault in such legislation. (Ill. Rev. Stat. 1957, chap. 122, par. 5A—1 *et seq.*) Prior to this decision, the court was committed to the view that the Township Organization Act and not the general or special election laws now in force governed the mode of conducting elections within the town. (*Smoda* v. *Gallagher,* 412 Ill. 271.) We have acknowledged in *Ruth* v. *Sanitary District, ante,* p. 11, at page 21, the constitutionality of legislation which provided that, under certain circumstances, "a proposition to issue bonds does not require submission thereof to the voters where the electorate has a voice in the selection of * * * the corporate authorities who impose the tax." How then can this court fail to recognize the right of the legislature to prescribe that certain township bond propositions shall be submitted to the electors only "at the place of the last regular town meeting" and that each town "shall for the purpose of the special election * * * constitute an election precinct."

Under the Township Organization Act, much of the old New England town meeting has been preserved. This act gives electors congregating in a single place vast and diverse powers of local self-determination. (Ill. Rev. Stat. 1957, chap. 139.) I submit that it is for the legislature to determine how much of this type of township government shall be retained.

In this case the legislature, by a special statute enacted subsequent in time to the Election Code, has made specific provisions for holding the type of bond referendum in question. These provisions were followed by the township

of Aurora. This election should not be set aside because of some vague concept of free elections which exists only in the minds of members of this court. I would affirm the trial court.

Mr. JUSTICE BRISTOW joins in this dissent.