# Illinois Official Reports

## Supreme Court

---

### *Williams v. BNSF Ry. Co.*, 2015 IL 117444

---

| | |
|---|---|
| Caption in Supreme Court: | ANTHONY WILLIAMS, Appellee, v. BNSF RAILWAY COMPANY, d/b/a The Burlington Northern Santa Fe Railway Company, Appellant. |
| Docket No. | 117444 |
| Filed | January 23, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a timely posttrial motion for a new trial was denied only orally and was not entered anywhere of record, and where, almost two months later, an entry was made in the law record disposing of posttrial motions, a notice of appeal filed within 30 days thereof was timely, and the Illinois Supreme Court refused to hold that the earlier ruling which was only oral was final for purposes of commencing the time for appeal—Federal Employers' Liability Act. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Clare McWilliams, Judge, presiding. |
| Judgment | Appellate court judgment reversed and remanded. |

Counsel on
Appeal

Raymond H. Groble III, Sean M. Sullivan and Jeffrey J. Scolaro, of Daley Mohan Groble, P.C., of Chicago, for appellant.

James D. Montgomery, Jr., and John K. Kennedy, of James D. Montgomery & Associates, Ltd., of Chicago, for appellee Anthony Williams.

James A. Fletcher and Peter C. McLeod, of Fletcher & Sippel LLC, of Chicago, for appellee Quality Terminal Services, LLC.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Garman and Justices Freeman, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Anthony Williams, filed suit against his employer, defendant BNSF Railway Company (BNSF), pursuant to the Federal Employers' Liability Act (45 U.S.C. § 51 (2006)), alleging an employment related injury. BNSF filed a third-party complaint for contribution and contractual indemnity against third-party defendant Quality Terminal Services, LLC (QTS). A jury rendered a verdict in favor of plaintiff, finding that plaintiff's injuries resulted from his employment. However, the jury assessed 50% of the fault to plaintiff, 37.5% to BNSF, and 12.5% to QTS. The jury also rendered a verdict in favor of QTS on BNSF's claim for contractual indemnity, finding that BNSF's notice of claim was untimely, so that QTS did not owe indemnification to BNSF.

¶ 2    BNSF and QTS filed timely posttrial motions. The circuit court of Cook County denied the posttrial motions, and BNSF filed a notice of appeal. The appellate court dismissed BNSF's appeal for lack of jurisdiction, finding that the notice of appeal was untimely. 2013 IL App (1st) 121901. The appellate court thereafter denied BNSF's motion to supplement the record on appeal, as well as BNSF's petition for rehearing. This court granted BNSF's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 3                                    BACKGROUND
¶ 4    BNSF owns and operates an intermodal rail facility, which handles receipt and shipment of freight in containers that are in, and on, specially designed railcars. Crane operators operate the overhead cranes that lift freight containers on and off train cars or truck chassis. The crane operator is generally assisted by a second person, the crane director. Crane directors perform a variety of job duties, including locking and unlocking freight containers for movement by rail or truck, and also provide assistance to the crane operators with some of the crane operations. The crane operator and the crane director are BNSF employees.

¶ 5    At the time of the accident at issue in this case, QTS provided certain intermodal services to BNSF pursuant to an Intermodal Facility Services Agreement. Pursuant to that contract, QTS provided ramp managers. Ramp managers gave BNSF crane operators and crane directors their assignments to perform their work, and generally supervised them during their shifts.

¶ 6    On August 21, 2003, QTS employee Frank Stephenson assigned plaintiff and crane director Bonnie Daemon to load and unload a train. Following their lunch break, Stephenson directed plaintiff to return to work alone, without crane director Daemon. Stephenson drove plaintiff to the job site and told plaintiff that he did not need a ground person. Plaintiff was directed to perform a series of "flips," which involves the use of a crane to lift a freight container from the ground and to place it on a chassis.

¶ 7    Plaintiff flipped all the containers to the waiting chassis. After performing the flips in his capacity as a crane operator, plaintiff proceeded to perform the job duties of crane director, locking the front and rear locking mechanisms of all the loaded chassis, which locks the container to the chassis. Plaintiff testified that when he came to the last unit, he locked the rear locks and then attempted to lock the front locking pins. Plaintiff was able to lock the right front locking pin without any problem, but could only insert the left front pin in partway. Plaintiff then used the square end of an iron bar, referred to as a "five-iron," to tap the pin into place. When the pin still would not go in all the way, plaintiff swung the five-iron in a baseball swing motion in order to hit the pin and knock it into place. Plaintiff testified that he felt a "pop" in his lower back as soon as the five-iron hit the pin.

¶ 8    Plaintiff radioed Stephenson and told Stephenson he had been hurt. Plaintiff was taken to the hospital. Medical testimony at trial indicated that plaintiff is permanently disabled.

¶ 9    Plaintiff filed suit against BNSF on August 10, 2006. Kevin Bell, a BNSF claims representative, testified at trial that BNSF did not assert an indemnity claim against QTS when it received plaintiff's complaint because the complaint did not mention QTS at all, and the allegations of the complaint primarily addressed equipment failure. Bell testified that the first time plaintiff told anyone from BNSF that Stephenson had ordered him to work alone was at plaintiff's May 2007, discovery deposition. Following plaintiff's testimony at his discovery deposition, BNSF provided written notice to QTS on August 9, 2007, of its intent to seek indemnification under its contract with QTS. QTS did not accept BNSF's demand for indemnity and defense, so BNSF filed a third-party complaint against QTS for contribution and indemnity on August 26, 2008.

¶ 10    As noted, following a jury trial, the jury returned a verdict in favor of plaintiff and awarded total damages in the amount of $2,676,960. After reducing the amount of damages based upon plaintiff's 50% comparative negligence, plaintiff was awarded $1,338,480. The jury found in favor of BNSF on its contribution claim against QTS. QTS was assessed 12.5% at fault for plaintiff's injury, for a total of $334,620. The jury found in favor of QTS on BNSF's indemnification claim.

¶ 11    BNSF filed a timely posttrial motion. BNSF's motion raised 46 assignments of error. BNSF sought a new trial on all issues, judgment as a matter of law on the indemnification claim, remittitur for a disability annuity plaintiff was receiving, and a setoff for future taxes BNSF would owe.

¶ 12	A hearing on the posttrial motions was held on April 18, 2012. Following argument, the trial court stated:

> "Thank you so much. I've had occasion to read all of the briefs that were presented to me and to hear oral argument of counsel. The post-trial motions that have been filed are respectfully denied, with the exception of the taxation issue which I will take under advisement. I will issue an order on that probably within the next ten days or so and my clerk will let you know when that's ready for pickup."

No written order was entered or prepared following the trial court's April 18 ruling.

¶ 13	On May 31, 2012, BNSF filed an emergency motion for leave to cite supplemental authority relating to a claim raised in its posttrial motion that it was entitled to a remittitur for the amount of disability payments received by plaintiff. At a June 1, 2012, hearing on BNSF's emergency motion, the following exchange took place:

> "THE COURT: *** And let me just recap because your motion seems to indicate, Mr. Scolaro [BNSF's counsel] that I've taken under advisement the entire post-trial motion. Were you unclear on some of my rulings?
>
> MR. SCOLARO: No. Your Honor, in advance of the written ruling that was forthcoming and the final appealable written ruling on all issues we wanted to submit for the Court's consideration what we believe is a case that was kind of, that was on point with certain issues in the post-trial motion, in BNSF's post-trial motion. ***
>
> THE COURT: I don't have the benefit of the transcript, and I know I was on trial the last time you came. I was very engaged in something that was going on. You have the transcript?
>
> MR. MONTGOMERY [plaintiff's counsel]: I do, [Y]our Honor.
>
> THE COURT: Okay. What did I say?
>
> MR. MONTGOMERY: If you turn to Page 21, there was no plan to file a written ruling. The ruling was the ruling. We could have chosen as lawyers to put it in an order.
>
> * * *
>
> THE COURT: Okay. This was my memory, that I had denied the post-trial relief with the exception of the taxation issue which I thought I'd take under advisement. And on that I hoped to get a written ruling; but if not, I will give you a cohesive ruling from the bench that I can cite some case law for you that I'm using. And, quite frankly, I just want to wrap my mind around the argument that you have. Why don't you review for me what's going—I think your argument is that the jury gave an award of lost wages."

¶ 14	Later, in discussing the case that BNSF sought leave to cite as additional authority, the following exchange took place:

> "MR. MONTGOMERY: It doesn't impact our case. I don't think counsel has any right at this stage after more than 30 days has [*sic*] passed to seek reconsideration of your prior ruling on the 18th. I think after 30 days your order is your order.
>
> THE COURT: Well, to whatever effect that may have any consequences with taxation I do want to look at that, and, you know, just to be very candid with you I want to be aware of all the case law out there so I'm not just putting a big block of case law out there. Just bringing it to my attention I think is appropriate.
>
> I do believe my ruling was that that portion of the post-trial motion was denied.

- 4 -

Now, there was the separate issue of taxation ***."

At the conclusion of the argument on BNSF's motion, the court stated:

"Okay. Thank you. I'm glad we're all here and you came back with us, and it offers me some clarity. This is what I'm going to do though. I'm going to ask you to come back one last time. I'm going to give you a record that you can take up because I assume you're going to take up this case."

The court then directed the parties to return on June 6, 2012.

¶ 15 On June 6, the trial court heard additional argument on the remaining posttrial issue and denied BNSF's motion. The trial court directed the parties to prepare an order. When BNSF's counsel asked if a written order would be forthcoming, the following exchange took place:

"THE COURT: No, that means you're to draft an order.

MR. SCOLARO: Okay, all right.

MR. MCLEOD [counsel for QTS]: The order is coming from you. So the order is going to cover their request of the last two pieces of—you called it—

THE COURT: This is what the order should say. For all the reasons stated in the record the post-trial motion is denied. Any future tax ramifications shall be—that may be—let's see, how should we put this.

MR. MCLEOD: That may ensue shall be bourne [*sic*] by respective party?

THE COURT: Yeah, perfect. Pursuant to—

* * *

MR. MONTGOMERY: And I just want to be clear, [Y]our Honor, when you say post-trial motions, you're referring to the taxes, right? We're not—we're denying something we denied already?

THE COURT: No, what I reviewed today was the disability offset with the lost wages issue and lost earnings capacity, as well as the tax issues. And those are set out in the last two portions of your post-trial motion.

* * *

MR. SCOLARO: Your Honor, would you like us to also include that this is a final and appealable order?

THE COURT: It is.

MR. MONTGOMERY: Well, that's fine.

THE COURT: I think you want a final and appealable order. There's nothing else pending."

¶ 16 When the parties drafted the order, a dispute arose concerning the language of the order. The parties asked that the case be recalled. When the case was recalled, the following exchange took place:

"MR. SCOLARO: Your [H]onor, I had drafted this order, and Mr. Montgomery had made some sort of unilateral changes to it, which you can see written above it.

We believe that this is the—as this is the first written order regarding posttrial motions, it should reflect a denial of all posttrial motions as well as the final appealable nature regarding the verdict in this matter.

- 5 -

MR. MONTGOMERY: Your Honor, I might ask—I take exception to the word 'unilateral.' I asked the Court if this was the order relating to the motions that the Court ruled on today, and the Court said, 'Yes, the disability payments and the taxes.'

So it was not unilateral. That was what the Court said.

At the conclusion, counsel asked the Court, 'Can we make this final and appealable?' I didn't object because the Court said, 'You can put in that this order is final and appealable.'

Counsel added some more language.

What counsel is trying to do, [Y]our Honor, if you haven't caught on to it yet, he is—whatever the operation of law is with respect to the Court's orders, counsel is trying to use the Court to change that today, making today the operative day from which 30 days for notices of appeal.

THE COURT: I understand where you're coming from.

What do you have a problem with?

MR. SCOLARO: Well, I at least believe that the part that's scratched out regarding—

THE COURT: No, I think it's appropriate that that's scratched out. This order is final and appealable in its entirety.

MR. SCOLARO: In its entirety.

THE COURT: The entire case for the record is final and appealable.

MR. SCOLARO: Okay.

THE COURT: So everything—there is [sic] no pending motions. There is a—this is a 304 finding—

MR. SCOLARO: Sure.

THE COURT: —and it's done."

¶ 17 The order that was entered on June 6, 2012, provided:

"This matter coming to be heard on post-trial motions, the Court being fully advised in the premises, it is hereby ordered:

1) For all reasons stated by the Court, on record, on June 6, 2012, post-trial motions relating to disability payments [and] taxes are denied;

2) All parties shall bear their respective tax liabilities;

3) This order is final and appealable."

The portion of the order that was scratched out was written after "This order is final and appealable," and stated, "regarding the verdict in this matter."

¶ 18 BNSF filed its notice of appeal on June 29, 2012, which was within 30 days of the entry of the June 6, 2012, order, but was 72 days after the trial court's April 18, 2012, oral ruling on BNSF's posttrial motion. Plaintiff filed a motion to dismiss the appeal for lack of jurisdiction. QTS joined that motion. A panel of the appellate court denied the motion to dismiss on August 12, 2012.

¶ 19 On appeal, BNSF argued that the trial court erred in denying its motion for a directed verdict on its contractual indemnity claim against QTS, that the trial court erred in refusing to allow evidence related to plaintiff's termination of employment with BNSF, and that the trial

court erred in allowing evidence of the loss of household services. 2013 IL App (1st) 121901, ¶ 2. In response, plaintiff, joined by QTS, again argued, *inter alia*, that the appellate court lacked jurisdiction over the appeal because the appeal was not timely filed. *Id*. ¶ 3.

¶ 20    The appellate court rejected BNSF's claim that the appellate court should not address the jurisdictional issue because another panel of the appellate court had already denied the motion to dismiss filed by plaintiff and QTS. *Id*. ¶ 5. The appellate court noted that given the complicated procedural posture of the case, it was difficult to discern the merits of the parties' respective positions on the timeliness issue without an in-depth examination of the record and the issues raised in the motion to dismiss. *Id*. In addition, because the motion to dismiss concerned jurisdiction over the appeal, the appellate court stated that it was appropriate for plaintiff and QTS to ask the court to revisit the issue, and that it had a duty to revisit the issue. *Id*.

¶ 21    Upon review, the appellate court concluded that it did not have jurisdiction over the appeal. The appellate court noted that the trial court had expressly denied all issues raised in BNSF's posttrial motion on April 18, 2012, specifically reserving only BNSF's setoff claim. *Id*. ¶ 20. The appellate court held that BNSF's request for a setoff did not toll the time for filing its notice of appeal from the court's oral ruling denying its posttrial motion. *Id*. Further, nothing in the record indicated that the parties, in particular BNSF, anticipated the entry of any written order reflecting the court's ruling. *Id*. Consequently, because the only issue remaining after April 18, 2012, was BNSF's request for a setoff, which did not toll the time for filing notice of appeal, BNSF was required to file its notice of appeal within 30 days after April 18, 2012, so that its notice of appeal filed 72 days later was untimely. *Id*. ¶ 22.

¶ 22    The appellate court further held that the fact that the trial court did not issue a written order denying the posttrial motions did not make the April 18, 2012, oral ruling any less final. *Id*. ¶ 25. The appellate court observed that Illinois Supreme Court Rule 272 (Ill. S. Ct. R. 272 (eff. Nov. 1, 1990)) provides that if no signed judgment is to be filed, the judgment is entered at the time it is entered of record. 2013 IL App (1st) 121901, ¶ 25. Because the trial court did not require the submission of a written order regarding the denial of BNSF's posttrial motion, the oral ruling on that motion was final on April 18, 2012, the date the oral ruling was entered of record. *Id*. ¶ 27. The appellate court held that it lacked jurisdiction over the appeal because the notice of appeal was not filed within 30 days of the trial court's denial of all posttrial motions, and therefore dismissed the appeal for lack of jurisdiction. *Id*. ¶ 28.

¶ 23    BNSF filed a petition for rehearing apprising the appellate court that it had overlooked or misapprehended that the oral ruling on April 18, 2012, was never entered of record on April 18, 2012, or any time prior to June 6, 2012. BNSF also filed a motion to supplement the record on appeal with a certified copy of the law record in the case. BNSF asserted that the law record confirmed that nothing had been entered of record in the case between April 6 and May 31, 2012, and that the only entry in the law record concerning disposition of posttrial motions was on June 6, 2012.

¶ 24    The appellate court denied BNSF's motion to supplement on October 22, 2013, and denied BNSF's petition for rehearing on January 31, 2014. This appeal followed.

ANALYSIS

As a preliminary matter, we note that BNSF filed a motion in this court to supplement the record on appeal with a certified copy of the trial court law record pursuant to Supreme Court Rules 329, 361 and 366 (Ill. S. Ct. R. 329 (eff. Jan. 1, 2006); R. 361 (eff. Dec. 29, 2009); R. 366 (eff. Feb. 1, 1994)). BNSF asserted that review of the law record would be an efficient and convenient method for this court to confirm that the trial court's oral ruling of April 18, 2012, does not appear anywhere in the common law record prior to June 6, 2012. BNSF argued that, pursuant to Supreme Court Rules 366(a)(3) and (a)(5), this court, in its discretion, may "order or permit the record to be amended by correcting errors or by adding matters that should have been included," or "make any order that ought to have been given or made."

Plaintiff and QTS objected to BNSF's motion to supplement. Plaintiff and QTS argued that as appellant, BNSF was required to supply the appellate court with a complete record before filing its brief, so to the extent that there were any gaps in the record that BNSF supplied, those gaps must be held against BNSF. Plaintiff and QTS asserted that the issue raised by BNSF on appeal—whether the appellate court erred in dismissing BNSF's appeal for lack of jurisdiction—should be reviewed in light of the materials that were actually before the appellate court when it ruled.

This court ordered that BNSF's motion to supplement the record on appeal, along with the objections of plaintiff and QTS, be taken with the case.

Supreme Court Rule 366(a)(3) provides:

"(a) *Powers*. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,

* * *

(3) order or permit the record to be amended by correcting errors or by adding matters that should have been included[.]" Ill. S. Ct. R. 366(a)(3) (eff. Feb. 1, 1994).

Supreme Court Rule 329 provides:

"The record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule. Material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, or by the reviewing court or a judge thereof. *** If the record is insufficient to present fully and fairly the questions involved, the requisite portions may be supplied at the cost of the appellant." Ill. S. Ct. R. 329 (eff. Jan. 1, 2006).

Upon review of BNSF's motion to supplement, and the objections thereto, we do not find the objections of plaintiff and QTS to be well taken. In support of their objection, plaintiff and QTS cite *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984), where the court observed that, "[f]rom the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Foutch* further held that it is appellant's burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and that any doubts that may arise from the incompleteness of the record will be resolved against the appellant. *Id*. at 391-92.

In this case, there is no basis to conclude that BNSF failed to present a sufficiently complete record of proceedings at trial to support its claims of error on appeal. None of the

issues that BNSF raised in its appeal required review of the trial court law record in order to determine those issues. A panel of the appellate court already had denied the motion to dismiss for lack of jurisdiction before BNSF filed the record on appeal and its appellate brief. That the appellate court subsequently chose to reexamine its jurisdiction should not be held against BNSF for purposes of its motion to supplement the record on appeal.

¶ 33     Further, although plaintiff, joined by QTS, raised the issue of jurisdiction in its response to BNSF's appellate brief, plaintiff there argued that (1) the trial court's oral pronouncement on April 18, 2012, commenced the 30 day period for filing a notice of appeal, and (2) BNSF's appeal was premature because *no* written order disposing of all posttrial motions was ever entered of record. Given plaintiff's concession that the oral ruling of April 18, 2012, was never entered of record, there was no need for BNSF to supplement the appellate record at that time to prove what plaintiff had conceded.

¶ 34     With regard to the documents submitted in the motion to supplement, neither plaintiff nor QTS argues that the trial court law record submitted by BNSF is inaccurate. Nor do we find that plaintiff or QTS would be prejudiced by allowing BNSF to supplement the record on appeal. Because the record on appeal is insufficient to present fully and fairly the questions involved in this appeal, we allowed BNSF's motion for leave to supplement the record on appeal with a certified copy of the law record.

¶ 35     We now turn to the issues raised in BNSF's appeal. BNSF first argues that the appellate court erred in holding that an oral ruling denying a posttrial motion is final under Supreme Court Rule 272, and thereby commences the time for filing a notice of appeal, even though the oral ruling is not entered anywhere of record. We agree with BNSF.

¶ 36     Supreme Court Rule 272 provides:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, *and the judgment is entered at the time it is entered of record.*" (Emphasis added.) Ill. S. Ct. R. 272 (eff. Nov. 1, 1990).

¶ 37     The appellate court in this case correctly observed that if no "signed judgment is to be filed, the judgment is entered at the time it is entered of record." 2013 IL App (1st) 121901, ¶ 25. The appellate court then held:

> "Given that the trial court never required the submission of a written order regarding the denial of BNSF's posttrial motion, the oral ruling on that motion was therefore final on April 18, 2012, the date it was entered into the record." *Id.* ¶ 27.

In so holding, the appellate court apparently assumed that the trial court's oral ruling constituted entry of record.

¶ 38     The appellate court's holding is perplexing, given the established authority to the contrary. Prior to the enactment of Rule 272, it was correct that a pronouncement in open court constituted an entry of judgment in a law case, while a record entry constituted an entry of judgment in an equity case. See *Freeport Motor Casualty Co. v. Tharp*, 406 Ill. 295 (1950), *overruled on other grounds by People ex rel. Schwartz v. Fagerholm*, 17 Ill. 2d 131 (1959). *Freeport* explained:

- 9 -

"A judgment at law becomes effective as soon as it is pronounced by the court. In the nature of things, a judgment must be rendered before it can be entered. *It dates from the time it was pronounced and not from the time it was entered upon the record by the clerk.*" (Emphasis added.) *Freeport*, 406 Ill. at 300.

¶ 39 *Freeport* recognized that rendering a judgment was not the same as entering a judgment, stating:

"there is a well-recognized distinction between rendering a judgment and entering a judgment. The former is the judicial act of the court in pronouncing its ruling or finding in the controversy; the latter is the ministerial act of the clerk in preserving the record of that decision." (Emphases omitted.) *Id*. at 299.

¶ 40 Rule 272 removed the distinction between entry of judgment in a law case and entry of judgment in an equity case. As set forth in the Committee Comments to Rule 272:

"The purpose of this rule is to remove any doubt as to the date a judgment is entered. It applies to both law and equity, and the distinction stated in *Freeport Motor Casualty Co. v. Tharp*, 406 Ill. 295, 94 N.E.2d 139 (1950), as to the effective dates of a judgment at law and a decree in equity is abolished." Ill. S. Ct. R. 272, Committee Comments (eff. Nov. 1, 1990).

¶ 41 Subsequent to the enactment of Rule 272, then, an oral pronouncement of judgment was not considered entered when rendered, but rather was considered entered when the oral judgment was entered of record. Soon after Rule 272 was enacted, the appellate court noted that "entered of record" had not yet been definitively construed, and addressed whether entry of judgment following an oral pronouncement meant entry of judgment into the court's minute book or into the law record. *Scott v. Dreis & Krump Manufacturing Co.*, 26 Ill. App. 3d 971 (1975).

¶ 42 The *Scott* court held:

"The rule that the court's minutes are not part of the record is supported in reason as well. Unlike a written judgment order, the court's minutes are not found in the file of the case, nor are they readily available to the public at a centralized location. The law record, on the other hand, is conveniently located for the benefit of the litigants and interested parties, and it is the document relied upon by the clerk's office in making up the record on appeal. Accordingly, under Supreme Court Rule 272, we hold that when the trial judge does not require the submission of a written judgment order, a judgment is entered of record when it is recorded in the law record book. Generally this entry will be made on either the same or following day of the oral pronouncement of judgment and its entry into the minute book. In any event, *the judgment is of record only at the time of the actual entry in the law record book.*" (Emphasis added.) *Id*. at 983-84.

¶ 43 Following the *Scott* decision, the appellate court in *Ahn Brothers, Inc. v. Buttitta*, 143 Ill. App. 3d 688, 690 (1986), observed that the great weight of authority established that the mere oral pronouncement of judgment did not constitute entry of judgment. Rather, under Rule 272, when a court makes an oral pronouncement of judgment, the oral judgment becomes final at the time it is entered of record. *Id.*

¶ 44 In the event it was still unclear whether an oral pronouncement of judgment constituted entry of record, the court's decision in *Swisher v. Duffy*, 117 Ill. 2d 376 (1987), should have

eliminated any lingering confusion. There, the court addressed oral pronouncements of judgment and held:

> "Since the record in this case contains no notation to the effect that the judge required the submission of a written judgment order as he may do under Rule 272, judgment was entered for purposes of Rule 272 when it was 'entered of record.' [Citation.] When the trial court granted the voluntary dismissal on October 1, *and a notation of the court's pronouncement was made by the clerk, the judgment was entered of record.*" (Emphasis added.) *Id*. at 380.

¶ 45 Contrary to the appellate court's holding in this case, then, the oral ruling on BNSF's posttrial motion did not enter that judgment of record. As argued by BNSF, and confirmed by a review of the trial court law record, the trial court's April 18, 2012, oral pronouncement was not entered of record in the law record book on April 18, 2012. The appellate court, therefore, erred in holding that the time for filing BNSF's appeal began to run on April 18, 2012.

¶ 46 We next must determine when the time to file BNSF's appeal began to run, in order to determine whether BNSF's appeal was timely filed. Plaintiff, joined by QTS, makes the unique argument that Rule 272 does not apply to BNSF's posttrial motion at all. Plaintiff claims that Rule 272 applies only to final judgments, which means only the actual entry of judgment, and not postjudgment proceedings. According to plaintiff, the final judgment in this case was entered on November 18, 2011, when the trial court entered judgment on the jury's verdict in favor of plaintiff and against BNSF in a written order. Plaintiff concedes that a trial court's ruling on a postjudgment motion often serves as the last ruling in a case, but argues that does not make such a ruling the court's "final judgment" for purposes of Rule 272.

¶ 47 As BNSF points out in response, plaintiff's argument that Rule 272 does not apply to postjudgment proceedings is quickly defeated by the decision in *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City*, 141 Ill. 2d 122 (1990). In that case, the trial court entered an order denying the defendant's posttrial motion on June 26, 1989. The trial court's docket sheet contained a June 26, 1989, entry recording the order, and an entry on June 27, 1989, indicating that the clerk sent copies of the order to the parties. On October 12, 1989, the defendant filed a motion for extension of time to file its notice of appeal, claiming that it did not receive a copy of the trial court's order until October 11, 1989. The appellate court denied the motion for extension of time, finding that it did not have jurisdiction to entertain the motion because neither the notice of appeal nor the motion for extension of time was timely filed.

¶ 48 The *Granite City* court affirmed. The court noted that under Supreme Court Rule 303(a) (Ill. S. Ct. R. 303(a) (eff. July 1, 1984)), if a timely posttrial motion directed against the judgment is filed, a notice of appeal must be filed " 'within 30 days after the entry of the order disposing of the last-pending post-trial motion.' " (Emphasis omitted.) *Granite City*, 141 Ill. 2d at 125 (quoting Ill. S. Ct. R. 303(a)(1)). The court observed that the time for filing a notice of appeal depends on the effective date of the judgment or order denying a posttrial motion. *Id*. The court thus looked to Rule 272 to determine that date. The court noted:

> "[u]nder Rule 272, a written judgment order is final when signed and filed with the clerk of court. (107 Ill. 2d R. 272.) Under Rule 303(a) a party has 30 days from the date the judgment is entered to file a notice of appeal, and an additional 30 days to file a motion for extension of time to file a notice of appeal under Rule 303(e)." *Id*. at 126.

The court held that under Rule 303(a), the defendant's notice of appeal was due July 26, 1989, 30 days after the judgment was entered on the defendant's posttrial motion. *Id*. at 127.

¶ 49 A ruling on a posttrial motion, then, constitutes a judgment for purposes of Rule 272. Plaintiff's argument to the contrary is without merit.

¶ 50 BNSF maintains that the trial court's final judgment on its posttrial motion was entered of record on June 6, 2012, rendering its appeal timely. We agree.

¶ 51 There is no question that the underlying proceedings on BNSF's posttrial motion were quite confusing. Nonetheless, it is clear from the law record that the denial of BNSF's posttrial motion was entered of record on June 6, 2012. Although the trial court's written order on June 6, 2012, referenced only the portion of the posttrial motion relating to disability payments and taxes, the law record contains three separate entries for that date. The first entry, which actually is repeated three times, states, "order on motion to execute or perform—allowed." The second entry states, "order on motion to [*sic*] new trial—denied." The third entry states, "order final and appealable."

¶ 52 The second entry clearly refers to BNSF's posttrial motion that was argued and orally ruled upon on April 18, 2012. This is the first and only entry in the law record referencing BNSF's posttrial motion for a new trial between April 18, 2012, and June 6, 2012. Pursuant to Rule 272, then, the trial court's April 18, 2012, oral judgment on BNSF's posttrial motion was entered of record on June 6, 2012, rendering BNSF's appeal timely. The appellate court, therefore, erred in dismissing BNSF's appeal for lack of jurisdiction.

¶ 53 BNSF then asks this court to address an issue that was briefed and argued, but not decided, in the appellate court. That issue is whether BNSF was entitled to a directed verdict on its contractual indemnity claim against QTS. BNSF asserts that a decision in its favor on this issue would render the other issues raised in the appellate court moot. BNSF claims that this issue presents a question of law.

¶ 54 QTS responds that this court should refuse BNSF's request to review its indemnification claim. QTS disputes BNSF's characterization of the issue as presenting a question of law, noting that there is a factual dispute concerning whether BNSF provided timely notice to QTS. QTS also denies that BNSF ever presented a motion for a directed verdict that was ruled upon by the trial court, or that BNSF raised the issue in a posttrial motion, so that BNSF has forfeited review of the jury's indemnification verdict.

¶ 55 We decline BNSF's request to review its claim that it was entitled to a directed verdict on its contractual indemnity claim against QTS. As the court observed in *Christopher v. West*, 409 Ill. 131, 134 (1951), reviewing issues not addressed by the appellate court "would in effect constitute the allowance of a direct appeal to this court in contravention of the statute." See also *Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America*, 411 Ill. 325, 336 (1952) ("arguments of counsel on a point other than one decided by the Appellate Court are not properly directed to this court until the question has been first decided by the Appellate Court"); *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88 (1995); *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389 (1989). We find this statement particularly applicable in this case, where the appellate court dismissed the appeal for lack of jurisdiction. In light of that dismissal, the appellate court did not address *any* issues raised by BNSF on appeal.

¶ 56 In addition, as BNSF acknowledges, should this court address the indemnity issue and find in favor of QTS, the case would have to be remanded to the appellate court to address the remaining issues raised by BNSF in its appeal. Consequently, judicial economy is not served by this court's review of BNSF's indemnity issue. *Cf. Krasnow v. Bender*, 78 Ill. 2d 42, 47 (1979) (court elected to address the merits of the case in the interest of judicial economy, even though the appellate court dismissed the appeal and did not reach the merits). We therefore remand the case to the appellate court with directions to consider the issues raised in BNSF's appeal.

¶ 57 Finally, we note that plaintiff argues that BNSF should be precluded from reasserting its request for a new trial if this court remands to the appellate court. Plaintiff claims that BNSF has abandoned its request for a new trial in its brief to this court. We do not have BNSF's appellate court brief before us, so we cannot determine whether BNSF raised its request for a new trial in the appellate court.

¶ 58 We find, however, that BNSF has not abandoned any of the issues that it did raise in the appellate court. Although BNSF asked this court to address only the indemnity issue, BNSF explained that it was asking this court to address the issue because it believed a ruling in its favor on that issue rendered the remaining issues on appeal moot. BNSF expressly stated that if this court declined to address the indemnity issue, or affirmed the judgment in favor of QTS on that issue, the case would have to be remanded to the appellate court to address its remaining issues on appeal.

¶ 59                                CONCLUSION

¶ 60 For the foregoing reasons, we reverse the appellate court's order dismissing BNSF's appeal for lack of jurisdiction. We remand the case to the appellate court for further proceedings consistent with this opinion.

¶ 61 Appellate court judgment reversed and remanded.